# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00218-CV

### BFI Waste Systems of North America, Inc. and Texas Natural Resource Conservation Commission, Appellants

### v.

### Martinez Environmental Group, City of China Grove, and Don McKenzie, Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. GN003403, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING

This case involves an urban landfill=s application to permit a major expansion. As cities grow, area landfills reach capacity. Attempts to obtain new landfill space, although necessary, are always unpopular with nearby landowners. BFI operates a landfill in east San Antonio. After several incremental expansions, it applied to the Commission[1] for an expansion permit that would more than triple the landfill=s size and allow it to operate for approximately fifty-seven more years before it reached capacity. Nearby

---

[1] By statute effective September 1, 2001, the legislature changed the name of the Texas Natural Resource Conservation Commission to the Texas Commission on Environmental Quality, to be effective January 1, 2004. The statute granted the TNRCC authority to adopt a timetable for phasing in the change of the agency's name, so that until January 1, 2004, the agency may perform any act authorized by law under either title. *See* Act of April 20, 2001, 77th Leg., R.S., ch. 965, ' 18.01, 2001 Tex. Gen. Laws 1985. On September 1, 2002, the agency began using its new name, while continuing to recognize the former. Because the parties have referred to the agency as the Commission in the briefs and at oral argument, we will do so as well in this opinion.

residents formed an organization, Martinez Environmental Group, to oppose BFI=s permit application. They were joined in their opposition by the nearby City of China Grove and an adjacent business owner Don McKenzie (collectively MEG). After a contested case hearing, the Commission approved BFI=s application and issued the expansion permit. MEG then sought judicial review in Travis County district court. *See* Tex. Gov=t Code Ann. '' 2001.171, .176 (West 2000). MEG claimed among other things: (1) that the permit approves a site operating plan that is not detailed enough to comply with Commission rules; (2) that BFI was required, and failed, to prove that it was entitled to a permit of lifetime duration at the contested case hearing; and (3) that evidence was improperly excluded at the contested case hearing. The district court agreed with MEG on the first two issues and remanded the case to the Commission with detailed instructions. The court did not rule on MEG=s evidentiary complaints. We agree with the district court that the site operating plan is insufficient and affirm that part of its judgment. We disagree with the district court=s ruling that the Commission misinterpreted its own rule regarding the life of the site, reverse that part of its judgment, and render judgment reinstating the Commission=s decision on the site=s duration.

**BACKGROUND**

BFI is in the waste disposal business. It operates several solid waste facilities across the country, including the Tessman Road Landfill in east San Antonio. The Tessman Road Landfill currently serves the city of San Antonio and several surrounding communities. In 1981, BFI obtained a permit to operate a below-ground landfill on 159 acres at this site. In 1985, BFI secured a permit allowing it to add 106 adjacent acres to the landfillCbringing the site=s total area to 265 acres. Twelve years later, BFI received a permit to expand its landfill vertically. This case concerns BFI=s latest application to expand the

landfill by adding 664 adjacent acres and by further increasing the landfill=s maximum height. This considerable expansion would extend the life of the landfill by approximately fifty-seven years. The Commission granted the expansion permit in 2000 after a contested case hearing.

BFI filed this latest permit application with the Commission in November 1997. The Commission processed the application according to its rules. In February 1998, the Commission=s executive director declared that the application was administratively complete. *See* Tex. Health & Safety Code Ann. ' 361.068 (West 2001); 30 Tex. Admin. Code ' 281.17(d) (2002). The executive director and his technical staff then conducted a technical review of the application. *See* 30 Tex. Admin. Code ' 281.19(a) (2002). In January 1999, the executive director determined that the application was technically complete. The executive director then prepared a draft permit, stating: AThis permit will be valid until cancelled, amended, or revoked by the Commission, or until the site is completely filled or rendered unusable, whichever occurs first.@ *See id*. ' 281.21.

MEG opposed the application, causing the matter to be referred to the State Office of Administrative Hearings (SOAH) for a contested case hearing.[2] MEG, the executive director, and others were admitted as parties. At the contested case hearing, MEG argued that the expansion permit should be denied on several grounds. Among other things, it challenged the adequacy of BFI=s site operating plan for control of windblown waste, odor, light, noise, and other nuisance concerns, and for its proposed use of an

---

[2] This contested case hearing was somewhat unique in that two administrative law judges (ALJs) conducted the entire hearing and collaborated in their proposal for decision, findings of fact, and conclusions of law.

alternative material, rather than dirt, as a daily cover for the site. MEG also argued that the permit, if issued, should be of limited duration, not for the life of the landfill.

After making certain revisions requested by MEG, requiring dirt as the daily cover and providing for better monitoring of windblown waste, the two ALJs issued a proposal for decision recommending that the Commission grant the permit. The ALJs also issued proposed findings of fact and conclusions of law on several of the contested issues. Although the proposal for decision specifically rejects MEG=s challenge to the lifetime duration of the permit, the ALJs inexplicably failed to address this issue in their findings of fact and conclusions of law. The Commission issued an order that incorporated the ALJs= recommended permit revisions, adopted the ALJs= findings of fact and conclusions of law, and approved BFI=s application for expansion of the landfill for the life of the site.

MEG then filed a motion for rehearing, complaining among other things that: (1) the site operating plan in BFI=s permit application failed to comply with chapter 30, section 330.114 of the Texas Administrative Code, which requires that Athe site operating plan . . . shall provide operating procedures for the site management and site operating personnel in sufficient detail to enable them to conduct the day-to-day operations of the facility@; (2) the ALJs improperly shifted the burden of proof on the duration issue to MEG, and BFI failed to prove that it was entitled to a lifetime permit; and (3) the ALJs improperly excluded relevant evidence of BFI=s compliance history at this and other BFI landfills. MEG=s motion for rehearing was overruled by operation of law. The Commission then issued the amended permit and MEG brought this action for judicial review in district court.

In its suit for judicial review, MEG raised the same complaints noted in its motion for rehearing. In its judgment, the district court found that the Commission failed to follow its own regulations both in approving the site operating plan and in granting the permit for the life of the landfill site. The court also issued several specific instructions to the Commission for handling the duration issue on remand.[3] The court declined to rule on MEG=s evidentiary complaints, stating however that A[u]pon remand . . . the court assumes that the administrative law judge will consider properly proffered evidence of problems in other BFI solid waste facilities . . . to determine the >sufficiency= of the site operating plan for this facility.@

## DISCUSSION

Whether the Commission failed to follow its own rules presents a question of law. *See Sonic Drive-In v. Hernandez*, 797 S.W.2d 254, 255 (Tex. App.CCorpus Christi 1990, writ denied). Essentially, we must decide if the district court erred in rejecting the Commission=s interpretation of its own regulations. Valid agency rules have the same force and effect as statutes. Generally, we construe agency

---

[3] The judgment specifically states:

Upon remand the ALJ must (1) determine whether the regulatory presumption shifts the burden of production or persuasion, (2) then consider all the evidence, and (3) then make findings of fact and conclusions regarding the duration of the permit. Based on the decision of the executive director, the commission must then make an order that specifies the duration of the permit.

5

rules in the same manner as statutes, striving to give effect to the agency=s intent and following the plain language of the rule unless it is ambiguous. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d. 248, 254 (Tex. 1999); *H.G. Sledge Inc. v. Prospective Inv. & Trading Co.*, 36 S.W.3d. 597, 603 (Tex App.CAustin 2000, pet. denied). But if there is vagueness, ambiguity, or room for policy determinations in the regulation, we will defer to the agency=s interpretation unless it is plainly erroneous or inconsistent with the language of the rule. *H.G. Sledge,* 36 S.W.3d at 604. Because it represents the view of the regulatory body that drafted and administers the rule, the agency interpretation actually becomes a part of the rule itself. *See McMillan v. Texas Nat. Res. Conservation Comm=n*, 983 S.W.2d 359, 362 (Tex. App.CAustin 1998, pet. denied).

### *Permit Duration*

The Commission=s rule for municipal solid waste facilities establishes the Alife of the site@ as the default duration period but grants the executive director discretion to shorten this period: AA permit is normally issued for the life of the site . . . . When deemed appropriate by the executive director a permit may be issued for a specific period of time.@ 30 Tex. Admin. Code ' 330.63 (2002).

The district court found that, as a matter of law, the Commission failed to follow this rule on three grounds: (1) the Commission confused the roles of the commissioners, the executive director, and the ALJs; (2) the ALJs misapplied the law of presumptions by requiring MEG to proffer conclusive evidence showing that the permit should not be for the life of the site; and (3) the Commission did not issue findings of

fact or conclusions of law on this contested issue. We agree with BFI and the Commission that the district court=s first two grounds are erroneous and that its third ground was not properly preserved.[4]

To support its finding that the Commission=s reading of the rule confused the roles of the commissioners, the executive director, and the ALJs, the district court opined that the agency interpretation allows the executive director to Aunilaterally decide the duration of the permit . . . and thereby determine the [C]ommission=s order.@ We disagree. Under the Commission=s reading of the rule, the executive director can, in his discretion, shorten the normal duration period. If, as here, the executive director does not exercise his discretion to shorten the period, interested parties can argue for a shorter period in a contested case hearing. The commissioners will then decide the issue based on the ALJs= proposal for decision.

---

[4] The district court refers to considerations of due process and compliance with the APA in reaching its decision that the Commission misread its permit-duration regulation. BFI argues that MEG did not preserve any complaint that the Commission Aviolated due process or the APA.@ We do not think the district court found such a violation. The district court drafted its order similar to an appellate opinion, laying out its reasoning. We construe its references to due process and the APA as a part of this reasoning. The court apparently used considerations of due process and compliance with the APA as aids to construction of the rule.

The rule unambiguously states that solid waste facility permits are normally issued for the life of the site and that the executive director can shorten this period when he deems a shorter period appropriate. However, this failure to shorten the duration of the permit may still be contested, as it was here. We do not see how the executive director=s failure to shorten the period amounts to Aunilaterally decide[ing] the duration of the permit,@ when an interested party can argue for a shorter period at a contested case hearing.[5]

---

[5] Under the district court=s reading of the rule, the executive director is never to make an initial decision on the site=s duration. Instead, ALJs must make the initial determination in a contested case hearing. According to the district court, the ALJs are then to send their proposal for decision to the executive director instead of the commissioners; and only then is the executive director to decide the site=s

duration Abased upon the ALJs= findings and conclusions. . . . [and] forward his decision to the commission for its consideration as part of its order.@

The district court=s interpretation is problematic. It disregards the plain language of the rule and construes it in isolation, ignoring the fact that the executive director is required to issue a draft permit after it completes a technical review. *See* 30 Tex. Admin. Code '' 281.19(a), .21(b). If the district court is correct, an initial draft permit must always be of lifetime duration because the executive director has no discretion to impose a shorter period until the application is challenged and sent to SOAH for a contested case hearing. But the rule plainly states that the executive director can shorten the duration period when he deems a shorter period appropriate.

The district court is also less than clear about the role it envisions for the executive director. Ordinarily, after a contested case hearing, a proposal for decision is forwarded to the commissioners who then make the final determination on all contested issues. But under the district court=s interpretation the executive director is interposed between the ALJs and the Commission on one issueBduration. It is not clear what weight the executive director=s recommendations are to carry. For example, can the executive director override the proposal of the ALJs? If the Commission had intended such an unusual process when it drafted section 330.63, it would surely have been more explicit about it.

The Commission=s interpretation of the rule is well illustrated by the facts of this case. After completing a technical review of the application, the executive director decided not to exercise his discretion to shorten the duration of the permit. This decision was memorialized in the executive director=s draft permit. When MEG opposed the application, the contested issues, including the duration issue, were sent to SOAH for a contested case hearing. The executive director, MEG, and BFI, were made a parties to this hearing. There, a member of the Commissioner=s staff testified that the draft permit was a preliminary document subject to change as a result of the evidence presented at the hearing. At closing argument, the executive director recommended that the Commission issue the draft permit for the life of the site.

We cannot say that the Commission=s interpretation of the roles of the executive director, the ALJs, and the commissioners, is plainly erroneous or inconsistent with the language of the rule.

The district court also found that the ALJs misapplied the law of presumptions by requiring MEG to proffer conclusive evidence showing that the permit should not be for the life of the site. This is not the case. We agree with MEG that at a contested case hearing Athe burden of proof is on the moving party by a preponderance of evidence.@ 30 Tex. Admin. Code ' 80.17(a) (2002). But we do not think that the ALJs actually required MEG to present Aconclusive evidence@ on the issue of duration. The ALJs wrote:

> That the legislature and/or Commission has seen fit to impose time requirements as to certain types of permits, but not others, reflects a regulatory intent that should not simply be disregarded by the ALJs. It is presumed that the Commission was aware of the time limitations for many types of permits, while still providing that MSW permits are to be Anormally issued for the life of the site.@ 30 Tex. Admin. Code ' 330.63(a). The ALJs see no reason to disregard the wording of this rule, absent conclusive evidence showing such a need.

Throughout their proposal for decision, the ALJs use the word Aconclusively@ in a colloquial manner. For example, when discussing use of alternative material for daily cover they write:

> While Protestants= evidence does not *conclusively* establish that all the problems experienced by local residents with odors, windblown waste, and vectors are related to the landfill, let alone the use of tarps, this is not dispositive. It is similarly true that Applicant did not *conclusively* establish that the Landfill and, more specifically, the use of tarps, does not contribute at all to the odor, windblown waste, and vector problems experienced by local residents. While it may be difficult to prove a Anegative,@ it is Applicant=s burden to establish that the proposed Permit terms will enable the Landfill to be in compliance with the MSW [municipal solid waste] rules. (Emphasis added).[6]

---

[6] There are other examples as well. When discussing the credibility of one of BFI=s witness the ALJs wrote: AWhile the evidence indicated a strong likelihood that the bottom of the landfill had been penetrated during drilling . . . such was not *conclusively* established. Moreover, such is not a dispositive issue in this proceeding.@ (Emphasis added.)

Colloquial use of the word Aconclusively@ is confusing and should perhaps be avoided in proposals for decision, particularly in light of the fact that there is a conclusive evidence standard elsewhere in the law.[7] But the language in the proposal for decision in this case does not indicate that the ALJs applied an incorrect standard of proof. Because the rule directs the permit to be issued for the life of the site, it was MEG=s burden to establish by a preponderance of the evidence that the period should be shortened. The ALJs considered MEG=s concern and recommended that the permit be granted for the life of the site. The commissioners followed the ALJ=s recommendation and we find substantial evidence in the record supporting this agency action.

The district court also found that the Commission Aerred by issuing a permit for the life of the site without any findings of fact or conclusions of law on this issue.@ ALJs should always include findings of fact and conclusions of law on each issue before them.[8] But because MEG did not complain in its motion

---

[7] To be entitled to a summary judgement in civil court a plaintiff must conclusively establish each element of his claim while a defendant must either conclusively establish each element of an affirmative defense or conclusively negate an element of the plaintiff=s claim. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

[8] The ultimate facts disputed during a contested case hearing do not always require detailed findings of underlying facts. *See Texas Health Facilities Comm=n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d

for rehearing about the Commission=s failure to make findings and conclusions on permit duration, this issue was not preserved for review.

A motion for rehearing is a statutory prerequisite to an appeal in a contested case. Tex. Gov=t Code Ann. ' 2001.145(a) (West 2000). The purpose of a motion for rehearing is to appraise the agency of the claimed error and allow the agency the opportunity to correct the error or prepare to defend against it. *Suburban Util. Corp. v. Public Util. Comm=n*, 652 S.W.2d 358, 365 (Tex. 1983); *Hill v. Board of Trs. of Ret. Sys.*, 40 S.W.3d. 676, 678 (Tex. App.CAustin 2001, no pet.). The timely filing of a motion for rehearing is jurisdictional, but the sufficiency of the motion=s content goes solely to the issue of preservation of error. *Hill*, 40 S.W.3d at 679. The motion must set forth: (1) the particular finding of fact, conclusion of law, ruling, or other action by the agency which the complaining party asserts was error; and (2) the legal basis upon which the claim of error rests. *Burke v. Central Educ. Agency*, 725 S.W.2d 393, 397 (Tex. App.CAustin 1987, writ ref=d n.r.e). To preserve error, both elements must be present in the motion, but neither requires a briefing of the law and the facts. *Id*. The standard is one of fair notice. *See id*.

MEG did complain about the lack of findings of fact and conclusions of law in its exceptions to the ALJs= proposal for decision. But in its motion for rehearing MEG claimed only: (1) that the ALJs

---

446, 450-51 (Tex. 1984) (underlying findings only required when ultimate finding is mandatory because set forth in relevant enabling act). Nonetheless, an agency must always include findings of fact and conclusions of law to support its decision on a contested issue. *See* Tex Gov=t Code Ann. ' 2001.141(b) (West 2000).

**13**

improperly shifted the burden of proof to MEG on the duration issue; (2) that the Commission arbitrarily failed to exercise its discretion to limit the site=s duration period; (3) that Aoverwhelming evidence@ supports MEG=s request for a limited duration period.

These alleged errors cannot be construed as encompassing or implying a complaint about the lack of findings of fact and conclusions of law on the duration of the permit. Moreover, because MEG had specifically complained about the absence of such findings in its exceptions to the ALJs= proposal for decision, the Commission was entitled to conclude that MEG had abandoned this complaint. *See Ross v. Texas Catastrophe Prop. Ins. Ass=n,* 770 S.W.2d 641, 643-44 (Tex. App.CAustin 1989, no writ) (pleadings filed before agency renders final order challenge only the proposal for decision). MEG=s motion did not set forth the agency action that the district court found to be errorCthe failure to include findings of fact and conclusions of law on the issue of duration. This alleged error was therefore not preserved for review.

We reject the district court=s ruling that the Commission did not follow chapter 30, section 330.63 of the Texas Administrative Code in determining the duration of the permit. We therefore reverse this part of the district court=s order and render judgment reinstating the Commission=s decision regarding the site=s duration.[9]

---

[9] In a suit for judicial review of an agency action, the reviewing court is empowered to issue only a general remand when it finds error that prejudices an appellants substantial rights. *See* Tex. Gov=t Code

**14**

*Site Operating Plan Detail*

An applicant must submit a detailed site operating plan as a part of its landfill permit application. 30 Tex. Admin. Code.'' 330.57 .114 (2002). A detailed, enforceable, site operating plan is crucial in light of the fact that permits are normally granted for the life of the landfill. When landfill expansions are frequent and incremental, affected parties can challenge the reoccurring expansion applications. But when major expansions are involved, as here, the next permit application may be decades away. Detailed site operating plans allow affected parties to maintain some oversight of these large landfills. BFI was required to submit a site operating plan that Aprovide[s] operating procedures for the site management and site operating personnel in sufficient detail to enable them to conduct the day-to-day operations of the facility.@ *Id.* ' 330.114. The rule further requires that A[a]s a minimum, the SOP shall include specific guidance, procedures, instructions, and schedules on: . . . the procedures that the operating personnel shall follow concerning the operational requirements of this subchapter.@ *Id*. The district court found that, as a matter of law, BFI=s site operating plan does not comply with this regulation. We agree and will affirm the district court=s judgment on this issue.

---

Ann. ' 2001.174 (West 2000). The district court therefore erred by including in its judgment detailed instructions on how the commission should determine the duration issue on remand. However, because we hold that the agency interpretation of the rule is valid, we need not address this point in detail.

The Commission and BFI claim that because MEG did not detail every alleged insufficiency of the plan in its motion for rehearing it therefore did not preserve a challenge to the entire site operating plan. We disagree. MEG=s motion for rehearing sufficiently challenges the entire plan:

> BFI failed to demonstrate that its site operating plan, including the plan for windblown waste, >provide operating procedures for the site management and the site operating personnel in sufficient detail to conduct the day-to-day operations of the facility,= as required by [chapter 30, section 330.114 of the Texas Administrative Code].

MEG then pointed out several specific insufficiencies, and concluded that:

> These >plans,= like most of BFI=s Site Operating Plans, are little more than a restatement of what the rules require. They are not true plans. Clearly they are not sufficient to meet the requirements of [chapter 30, section 330.114 of the Texas Administrative Code]. The Commission should reconsider its decision granting BFI=s application and should require specific, detailed, operating plans that will ensure that BFI will cease causing nuisance conditions.

This language was itself sufficient to preserve MEG=s complaint about the entire site operating plan. It clearly sets out the agency action that it asserts was errorCthe Commission=s failure to follow chapter 30, section 330.114 of the Texas Administrative Code. MEG was not required to provide a detailed briefing of the law and the facts surrounding its complaint. *See Burke*, 725 S.W.2d at 397.

Instead of setting out specific operating procedures in its regulations, the Commission=s rules consist of general requirements that allow landfill operators to develop specific operating procedures tailored to their individual sites. These specific procedures must be included in a detailed site operating plan,

**16**

and deviation from an approved site operating plan will be deemed a violation of the administrative code. *See* 30 Tex. Admin. Code ' ' 330.57, .111 .114.

Much of the BFI=s site operating plan merely mimics the broad language of the code sections that it is supposed to implement.  For example, section 330.115 requires a landfill operator to Amaintain a stockpile of earth within 2,500 feet of the working face or active disposal area,@ while the site operating plan requires Aa stockpile of earth sufficient to cover the entire working face or active disposal area will be maintained within 2,500 feet of the active disposal area.@[10]

There are no detailed general rules to guide the daily operation of a municipal solid waste plant.  The Commission has rejected a one-size-fits-all approach to regulation, in favor of individual site operating plans tailored to meet specific locations.  Each site operating plan must therefore provide specific, enforceable procedures to govern the daily operation of a specific landfill.  The exact level of detail required of each individual section of a plan is a matter of agency discretionCbut, at a minimum, a plan must set out enforceable procedures and be more detailed than the general rules that it implements.  We affirm the district court=s ruling that BFI=s site operating plan does not comply with chapter 30, section 330.114 of the Texas Administrative Code.

---

[10]   There are several additional sections of the site operating plan that do little more than echo the general language of the code sections they are supposed to implement.

*Other Issues*

The district court did not rule on MEG=s complaint that the Commission improperly excluded relevant evidence of BFI=s compliance history at this and other landfills. It is similarly unnecessary for us to rule on this point. On remand, the ALJs can determine the admissibility of this and other evidence in light of our holding that BFI must provide a more detailed site operating plan.

Finally, BFI and the Commission claim that the district court erred by vacating the Commission=s order instead of reversing it. In its judgment, the district court uses the terms Avacate@ and Areverse@ interchangeably. We agree with BFI and the Commission that the district court had no authority to vacate the Commission=s order. *See* Tex. Gov=t Code Ann. ' 2001.176(b)(2) (West 2000). However, we construe the district court=s judgment to reverse, not vacate, the Commission=s order.

## CONCLUSION

We agree with the district court=s ruling that the site operating plan is insufficient and affirm that part of its judgment. We disagree with the district court=s ruling that the Commission misinterpreted its own rule regarding the life of the site. We reverse that part of its judgment and render judgment reinstating the decision of the Commission regarding the site=s duration. The scope of the district court=s remand to the Commission is modified accordingly. This cause is remanded to the Commission for further consideration of the site operating plan.

18

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed in Part; Reversed and Rendered in Part

Filed:   November 21, 2002

Publish