# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-07-00405-CV

---

### TEXALTEL, Appellant

v.

### Public Utility Commission of Texas, Appellee

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-06-004229, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

TEXALTEL, a trade association of competitive telecommunication providers that do business in Texas,[1] filed suit against the Public Utility Commission challenging the Commission's August 17, 2006 "Order Establishing Revised Weighted Statewide Average Composite Usage Sensitive Intrastate Switched Access Rates" pursuant to section 52.155 of the Public Utilities Regulatory Act and the version of P.U.C. Substantive Rule 26.223 in effect at the time. *See* Tex. Util. Code Ann. § 52.155 (West 2007),[2] 25 Tex. Reg. 6978 (2000)

---

[1] The Members of TEXALTEL who claim an interest in this proceeding include Alpheus; Bestline Communications; Capital Telecommunications, Inc.; DPI Teleconnect; Grande Communications; Huntleigh Telecom; Logis Communications; McLeod U.S.A.; Meriplex Communications; NovoLink Communications, Inc.; Tex-Link Communications, Inc.; TeleNetwork; TRC Telecommunications, Inc.; and Advantage Telecom.

[2] Because the language of this section has not materially changed, we cite to the current version for convenience.

(codified at 16 Tex. Admin. Code § 26.233).[3] TEXALTEL contends that the Commission deviated from its own rate-setting methodology prescribed in rule 26.223, thereby acting arbitrarily and capriciously, making "an illegal *de facto* rule change" and violating TEXALTEL's due process rights.[4] The parties filed cross-motions for summary judgment. The district court granted the Commission's motion, denied TEXALTEL's,[5] and rendered judgment for the Commission. TEXALTEL appeals. We will affirm the district court's judgment.

Before turning to TEXALTEL's specific complaint, it is helpful to review the statutory and regulatory context in which the complaint arises. The Commission has jurisdiction to regulate switched-access charges—the wholesale rates paid by long distance telephone companies to local telephone companies for access to the local telephone company's end users—applicable to long-distance intrastate calls. Under PURA section 52.155, telecommunication utilities that hold a certificate of operating authority or a service provider certificate of operating authority

---

[3] Our subsequent references to rule 26.233 are to the version then in effect.

[4] In keeping with its characterization of the Commission's actions as a *de facto* rulemaking, TEXALTEL styled its suit a declaratory-judgment action under Texas Government Code section 2001.038, but pled in the alternative that it was seeking judicial review from a contested-case proceeding under Texas Government Code section 2001.171 and under the district court's inherent jurisdiction to review agency orders regarding due-process violations.

Following the events giving rise to this appeal, rule 26.223 was amended to be effective on September 4, 2006, 31 Tex. Reg. 7123, and on June 20, 2007, 32 Tex. Reg. 3584, and the parties indicate that the Commission has since established average switched-access rates under the new rules that supersede those TEXALTEL challenges here. TEXALTEL limits its complaint to the rates established under the prior rule (or "*de facto* rulemaking") during the period in which they were in effect.

[5] The court also denied a plea to the jurisdiction asserted by the Commission. The Commission does not appeal this ruling.

(Competitive Local Exchange Carriers, or CLECs) may charge intrastate switched-access rates that are no greater than the prevailing rate charged by the holder of the certificate of convenience and necessity or the holder of a certificate of operating authority under PURA chapter 65 (Incumbent Local Exchange Carriers, or ILECs) in whose territory the call originates or terminates unless (1) the CLEC obtains Commission approval to charge a higher rate, or (2) "subject to commission review, the [CLEC] establishes statewide average composite originating and terminating intrastate switched access rates based on a reasonable approximation of traffic originating and terminating between all [ILECs] in this State." Tex. Util. Code Ann. § 52.155(a). TEXALTEL terms the rates CLECs can charge under the latter exception "safe harbor" rates. Section 52.155 further provides that "[n]otwithstanding any other provision of this title, the commission has all jurisdiction necessary to enforce this title." *Id.* § 52.155(b).

The Commission enacted rule 26.223 to implement PURA section 52.155. *See* 16 Tex. Admin. Code § 26.223(a). Of relevance here, the Commission prescribed a methodology for establishing the "reasonable approximation" of traffic originating and terminating between all ILECs in the state that was to be the basis for the "safe harbor" rates CLECs could charge. *See id.* § 26.223(c). Within thirty days of the rule's June 30, 2000 effective date, all ILECs were required to file with the Commission their "current tariffed rate" for several different categories of originating and terminating rate elements[6] and "[t]he total actual originating and terminating MOUs [minutes of use] for the most recent 12 month period" for the same rate elements.

---

[6] These rate elements were originating and terminating carrier common line (CCL), local switching (LS), switched transport (TR), tandem switching (TS), and tandem switched transport (TST). 16 Tex. Admin. Code § 26.223(b), (f)(1).

3

*See id.* § 26.223(f)(1). Based on these filings by the ILECs, the Commission was required, within 60 days of the rule's effective date, to "establish weighted statewide average composite usage sensitive intrastate switched access rates" for each originating and each terminating rate element category. *See id.* § 26.223(d)(1). The rule then prescribed a mathematical calculation through which the Commission would determine statewide total revenue for each rate element and statewide total actual MOUs for each rate element, and divide the former by the latter to yield a "weighted statewide average composite usage sensitive intrastate switched access rate" for each rate element. *See id.*

Under the version of the rule at issue, ILECs were thereafter required to file biennially, by June 1 of that year, their "current tariffed rate" for each of the same originating and terminating rate element categories required in their original filings, "[t]he current originating and terminating tariffed rate(s) for any other usage sensitive intrastate switched access rate element(s)," and "[t]he total actual originating and terminating MOUs of the most recent 12 month period" for each of those rate elements. *See id.* § 26.223(f)(2). In turn, the Commission was required to "re-calculate the weighted statewide average composite usage sensitive intrastate switched access rates biennially based upon the submission of the [ILECs] as required in subsection (f) . . . [to] become effective November 1 of that year." *See id.* § 26.223(d)(2)(A).

In addition to requiring this biennial recalculation, the subsection of the rule governing "recalculation" further provided that an ILEC could petition for the Commission to recalculate the weighted statewide average composite usage sensitive intrastate switched-access rates "at any time but not sooner than the most recent recalculation." *See id.* § 26.223(d)(2)(B). The subsection further provided:

4

As provided in subsection (f) of this section [governing the types of filings required of ILECs, discussed above,] the commission may also require . . . submissions by [ILECs] for re-calculation of the weighted statewide average composite usage sensitive intrastate switched access rates *as appropriate because of significant changes in usage sensitive switched access rates* or in response to the request of affected parties, as specified in subparagraph (B) of this paragraph.

*See id.* § 26.223(d)(2)(C) (emphasis added).

The present cause arose in connection with the Commission's 2006 biennial recalculation. In May 2006, the Commission initiated Project No. 32679[7] to recalculate the average intrastate switched-access rates that could be charged by the CLECs until the next re-calculation, then scheduled to occur in 2008. The Commission requested filings from ILECs, due June 1, concerning their current tariffed rates and their MOU data for the twelve-month period ending March 31, 2006. *See id.* § 26.223(f)(2).

In its August 17, 2006 Order, the Commission adopted statewide average intrastate switched-access rates based on ILECs' tariffed rates as of *August 10, 2006*, rather than the earlier June 1, 2006 cut-off that the rule contemplated for the biennial recalculation. *See id.* § 26.223(f)(2). The Commission apparently used the same twelve months of historical MOU information in the calculation, however. The Commission took this action in response to concerns regarding the impact of the 2005 telecommunications deregulation legislation on the tariffed switched-access that certain large ILECs could charge. As the Commission explained in its Order, "PURA §§ 65.202 and 65.203 mandate that on July 1, 2006, transitioning [ILECs] reduce their originating and terminating

---

[7] *Project to Develop COA/SPCOA Statewide Average Switched Access Rates for November 2006 Publication Pursuant to PURA §52.155 and PUC Subst. R. § 26.223*, Project No. 32679 ("Project No. 32679").

per-minute-of-use switched-access rates by certain percentages of the difference between their interstate and intrastate rates in effect on June 30, 2006," with further reductions by July 1, 2007, and still further reductions until the rates were reduced to parity with interstate rates by July 1, 2008 or 2009. *See* Tex. Util. Code Ann. §§ 65.202, .203 (West 2007). Consequently, if the Commission had based its biennial recalculation of statewide average intrastate switched-access rates on the June 1, 2006 tariffed rates as ordinarily contemplated by the rule, ILECs that were transitioning to deregulation would incur significant reductions to their own tariffed switched-access rates on July 1, 2006, 2007, and 2008, yet the recalculated average switched-access rates made the basis of the CLEC's safe-harbor rates during the same period would be based on the ILECs' substantially higher, June 1, 2006 tariffed rates.

The Commission justified this action as supported by rule 26.223(d)(2)(C), which it construed as authorizing it to recalculate the weighted statewide average composite usage sensitive intrastate switched-access rates outside the ordinary two-year cycle "as appropriate because of significant changes in usage sensitive switched access rates." 16 Tex. Admin Code § 26.223(d)(2)(C). It "conclude[d] that the rate reductions mandated by PURA §§ 65.202 and 62.203 are significant changes in switched-access rates . . . and that a recalculation under the provisions of that rule is appropriate at the present time." It ordered that the statewide average rates be recalculated pursuant to rule 26.223(f) "using current (August 10, 2006) tariffed rates." This had the effect of ensuring that the average switched-access rates it was establishing incorporated the July 1, 2006 reductions in the switched-access rates of transitioning ILECs instead of the earlier, higher tariffed rates that these ILECs could no longer charge.

6

TEXALTEL complains that by using the ILECs' August 10, 2006 tariffed rates rather than the higher June 1 rates, the Commission "arbitrarily and capriciously deviated from its own rules." Although acknowledging that rule 26.223(d)(2)(B) and (C) permit the Commission to "re-calculate the rates at issue more frequently than the ordinary two-year interval," TEXALTEL argues that the Commission "must use the established methodology" set forth in rule 26.223(d)(1) and (f). This methodology, TEXALTEL insists, requires "historical data." The Commission strayed from this requirement, TEXALTEL maintains, because it relied instead on "new forward-looking tariffs."

The failure of an agency to follow the clear, unambiguous language of its own rules is arbitrary and capricious, and will be reversed. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254-55 (Tex. 1999). "We construe administrative rules, which have the same force as statutes, in the same manner as statutes." *Id.* at 254. "Unless the rule is ambiguous, we follow rule's clear language." *Id.* We defer to an agency's interpretation where there is vagueness, ambiguity, or room for policy determinations in the regulation, but we cannot defer to an administrative interpretation that is plainly erroneous or inconsistent with the regulation. *Id.* (quoting *Public Util. Comm'n of Tex. v. Gulf States Util. Co.*, 809 S.W.2d 201, 207 (Tex. 1991)); *BFI Waste Sys. of N. Am., Inc. v. Martinez Envtl. Group.*, 93 S.W.3d 570, 575 (Tex. App.—Austin 2002, pet. denied).

We conclude that the Commission did not stray from rule 26.223's plain language here. TEXALTEL concedes that rule 26.223 authorized the Commission to "re-calculate the rates at issue more frequently than the ordinary two-year interval." The "established methodology" of rules 26.223(d)(1) and (f), on which TEXALTEL relies, required the Commission, as detailed above,

7

to utilize ILEC's "current tariffed rate" for several different categories of originating and terminating rate elements when calculating the average switched-access rates.  In its August 17, 2006 Order, the Commission utilized ILEC tariffs in effect on August 10, 2006.  The Commission's interpretation of its rule to permit the use of August 10 tariffs in a calculation effective on August 17 is not plainly erroneous or inconsistent with the requirement that it use "current tariffed rate[s]."

We overrule TEXALTEL's issue and affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   July 24, 2008

8