

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00070-CV

_____


NAWAID ISA, Appellant

V.

PUBLIC UTILITY COMMISSION OF TEXAS; AMBIT ENERGY, LLC; AND
CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC, Appellees

On Appeal from the 201st District Court
Travis County, Texas
Trial Court No. D-1-GN-15-002634

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# O P I N I O N

After Nawaid Isa's electric bill for his outdoor cricket fields increased dramatically as a result of additional charges related to his high energy usage (demand charges), Isa refused to pay the demand charges and eventually filed a formal complaint with the Public Utility Commission of Texas (the PUC) against Ambit Energy, LLC (Ambit), and CenterPoint Energy Houston Electric, LLC (CenterPoint), requesting a refund of the demand charges, and a refund of construction charges paid to CenterPoint and asserting claims for mental suffering and litigation costs. In a series of orders, the Administrative Law Judge (ALJ) assigned to hear the case dismissed Isa's other claims and ultimately dismissed the matter with prejudice (the ALJ's dismissal order) after Ambit credited all of the demand charges to Isa's account. After his appeal of the ALJ's dismissal order was denied by the PUC by operation of law, Isa appealed to the 201st Judicial District Court of Travis County.[1] The PUC, Ambit, and CenterPoint filed pleas to the jurisdiction asserting that Isa failed to exhaust his administrative remedies when he failed to file a motion for rehearing with the PUC. The trial court granted the pleas to the jurisdiction and dismissed Isa's administrative appeal with prejudice.

In this appeal, Isa does not dispute that he failed to file a motion for rehearing after his appeal of the ALJ's dismissal order was denied. Rather, he asserts that the trial court erred in granting the pleas to the jurisdiction because (1) his appeal of the ALJ's dismissal order should be construed as a motion for rehearing, (2) filing a motion for rehearing after the PUC denied his

[1]Originally appealed to the Third Court of Appeals in Austin, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Third Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

appeal would have been futile, (3) the ALJ's dismissal order was not compliant with the requirements of the PUC's rules and the Texas Government Code, and (4) the PUC's rules prevent filing a motion for rehearing instead of an appeal from the ALJ's dismissal order.[2] We find that (1) the PUC's rules required Isa to file a motion for rehearing after his appeal of the ALJ's dismissal order was denied, (2) Isa's excuse for not filing a motion for rehearing does not meet the requirements of the futility exception, (3) any complaint regarding deficiencies in the ALJ's dismissal order were required to be addressed in the motion for rehearing, and (4) he was not prevented by the PUC's rules from filing a motion for rehearing. Consequently, we will affirm the trial court's dismissal of Isa's appeal from the PUC.

## I.      Background

In 2013, Isa constructed a lighted cricket field in Wallis, Texas. He installed sixty-foot-tall, concrete poles with high-efficiency flood lights and other facilities for use at the cricket field. Isa worked with CenterPoint, the designated transmission and distribution utility (TDU), to connect his lighting system to CenterPoint's existing electric delivery system. As a result, CenterPoint installed a utility pole with transformers at a cost to Isa of $3,341.00. Afterward, Isa selected Ambit, a retail electric provider (REP), to provide his electric service and began receiving electric service on August 30, 2013. At the time, the cricket field was classified a "Commercial Under 10 KVA" customer by CenterPoint.

---

[2]In his fifth point of error, Isa asserts that he has not been made whole as stated in the ALJ's dismissal order. However, this issue goes to the merits of Isa's claim and is outside the scope of our review of the trial court's order on the pleas to the jurisdiction.

3

In October 2013, the cricket field's electricity consumption exceeded 10 KVA, which triggered a new service classification under CenterPoint's approved tariff. As a result, CenterPoint charged Ambit additional charges triggered by the cricket field's high energy usage. These demand charges were then billed to Isa by Ambit beginning in October 2013.[3] Isa disputed the demand charges and refused to pay them. Isa also refused to pay the demand charges in his November bill, and refused to pay any of Ambit's final bill in December. On December 28, 2013, Ambit received a drop order from Isa, who had switched to a new REP. As of Ambit's final bill, Isa had refused to pay of total of $2,184.56, including $1,955.74 in demand charges.

On December 10, 2013, Isa filed an informal complaint with the PUC's Consumer Protection Division, and alleged that Ambit and CenterPoint failed to inform him about the demand charges that his cricket club began to incur on its electric bill. After his informal complaint was denied, Isa filed a formal complaint with the PUC against Ambit and CenterPoint, disputing the demand charges. On February 14, 2014, the PUC referred the complaint to the State Office of

---

[3]The Texas Supreme Court has recently explained the relationship between a TDU, a REP, and the customer:

> In 1999, the Legislature passed Senate Bill 7[, Act of May 27, 1999, 76th Leg., R.S., ch. 405, § 39, 1999 Tex. Gen. Laws 2543 [SB 7,] "to establish competition in the retail market for electricity beginning January 1, 2002, and 'to protect the public interest during the transition' to competition." Senate Bill 7 unbundled vertically integrated utilities in [the Electric Reliability Council of Texas], mandating that each electric utility separate its business activities into a power generation company, an REP, and a TDU. The statute deregulated power generation companies and REPs, creating "a competitive retail electric market that allows each retail consumer to choose the customer's provider of electricity". [sic] But TDUs remained fully regulated by the PUC. Under deregulation, TDUs still deliver electricity directly to the retail consumer's meter and provide metering services, but the charges for TDUs' services are paid by REPs, which in turn charge the consumer.

*Oncor Elec. Delivery Co. LLC v. Pub. Util. Comm'n of Tex.*, 507 S.W.3d 706, 711–12 (Tex. 2017) (citations omitted).

4

Administrative Hearings (SOAH).[4] Isa subsequently complained of CenterPoint's alleged failure to provide him with information regarding alternative construction options and technology at the time he contracted with CenterPoint to install an in-line pole on the property.

In three orders, the ALJ granted summary decisions in favor of Ambit and CenterPoint on all of Isa's claims, except his claims regarding the demand charges. The ALJ also determined that the only remedy for Isa if he prevailed on his claims would be a refund of or credit of some or all of the demand charges. *See* TEX. UTIL. CODE ANN. § 17.157(b)(3) (West 2016). During the pendency of the complaint, Ambit placed a hold on collection activities regarding Isa's unpaid bill. After one year, Ambit credited Isa's account in the amount of $2,184.56 to satisfy the balance owed on the account and notified Isa of that credit on January 27, 2015. Ambit and CenterPoint then filed a joint motion to dismiss, arguing that since Ambit had not tried to collect the disputed demand charges and had credited Isa's account with more than the amount in dispute, his claims were moot.

On June 4, 2015, the ALJ granted the joint motion to dismiss and dismissed Isa's complaint with prejudice. In its order of dismissal, the ALJ noted,

In support of their motion, Ambit and CenterPoint provided evidence that:

- Ambit was [Isa's] REP from August 3, 2013, until December 28, 2013.

- While Ambit was [Isa's] REP, [Isa] was charged, at most, $1,955.74 in demand charges that were disputed by [Isa].

- When [Isa] left Ambit and switched to another REP, Ambit's records showed that [Isa] owed $2,184.56 in unpaid charges.

---

[4]The SOAH performs contested case hearings for the PUC. TEX. GOV'T CODE ANN. § 2003.049 (West 2016).

5

- Ambit did not try to collect the unpaid charges, and in January 2015, Ambit wrote to [Isa] and informed him that it had credited his account for the full amount of $2,184.56 and advised its third-party collection agency to remove the delinquent balance from his records.

(Footnote omitted).

The ALJ then held that "the ALJ agrees that Ambit has already effectively made [Isa] whole . . . and that no additional relief could be awarded even if [Isa] prevailed at the hearing on the merits" and dismissed the matter with prejudice pursuant to PUC rule 22.181. *See* 16 TEX. ADMIN. CODE § 22.181 (2016) (Pub. Util. Comm'n of Tex., Dismissal of a Proceeding), *adopted by* 41 Tex. Reg. 10597 (2016).[5] On June 10, 2015, Isa appealed the ALJ's dismissal order to the PUC. *See* 16 TEX. ADMIN. CODE § 22.181(a)(4) (2016) (Pub. Util. Comm'n of Tex., Dismissal of a Proceeding) (providing that a dismissal of a proceeding by the presiding officer may be appealed pursuant to PUC rule 22.123). When no commissioner voted to hear it, Isa's appeal was deemed denied by the PUC on June 22, 2015. *See* 16 TEX. ADMIN. CODE § 22.123(a)(7)(A) (2016) (Pub. Util. Comm'n of Tex., Appeal of an Interim Order & Motions for Reconsideration of Interim Order Issued by the Comm'n). Isa did not file a motion for rehearing with the PUC, but instead filed a petition for judicial review of the PUC's final order in the Travis County district court[6] on July 2, 2015. On September 14, 2016, the district court granted pleas to the jurisdiction filed by the PUC, Ambit, and CenterPoint.

---

[5]PUC rule 22.181 was amended effective January 5, 2017. All references to rule 22.181 herein will be to the rule in effect at the time Isa's complaint was dismissed.

[6]Unless a statute provides otherwise, a petition for review of an administrative decision must be filed in a Travis County district court. TEX. GOV'T CODE ANN. § 2001.176(b)(1) (West 2016).

## II.     Standard of Review

A plea to the jurisdiction is a dilatory plea asserting that a trial court lacks subject-matter jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Whether a trial court has subject-matter jurisdiction is a question of law that is reviewed de novo. *Id.* at 226. A plea to the jurisdiction may challenge whether the plaintiff's pleadings affirmatively allege facts showing the court's jurisdiction and may also challenge the existence of jurisdictional facts to support the pleadings. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).

The plaintiff has the initial burden to demonstrate the trial court's jurisdiction. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012); *see Miranda*, 133 S.W.3d at 226. The pleadings are construed liberally in favor of the plaintiff, looking to the plaintiff's intent. *Miranda*, 133 S.W.3d at 226. "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial courts [sic] jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Id.* at 226–27 (citing *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002)). Conversely, "[i]f the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Miranda*, 133 S.W.3d at 227 (citing *Brown*, 80 S.W.3d at 555).

### III. A Motion for Rehearing is a Prerequisite to a Petition for Judicial Review

Proceedings of the PUC are governed by the Public Utility Regulatory Act,[7] the Administrative Procedure Act (APA),[8] and the Administrative Code.[9] *City of Port Arthur v. Sw. Bell Telephone Co.*, 13 S.W.3d 841, 843–44 (Tex. App.—Austin 2000, no pet.); *see* TEX. UTIL. CODE ANN. § 11.007(a) (West 2016); 16 TEX. ADMIN. CODE § 22.1(b)(1) (2016) (Pub. Util. Comm'n of Tex., Purpose & Scope). Any party to a PUC proceeding who has exhausted its administrative remedies within the PUC is entitled to judicial review. *See* TEX. GOV'T CODE ANN. § 2001.171 (West 2016); TEX. UTIL. CODE ANN. § 15.001 (West 2016). In order to exhaust its remedies, and as a prerequisite to judicial review, the party seeking judicial review of a PUC decision "must have filed a motion for rehearing in the underlying" proceeding at the PUC. *City of Port Arthur*, 13 S.W.3d at 844 (citing TEX. GOV'T CODE ANN. § 2001.145(a) (West 2016)); *See Suburban Util. Corp. v. Pub. Util. Comm'n of Tex.*, 652 S.W.2d 358, 364 (Tex. 1983); *see also* 16 TEX. ADMIN. CODE § 22.264(a), (c) (2016) (Pub. Util. Comm'n of Tex., Rehearing) (providing that motions for rehearing, replies thereto, and their filing deadlines shall be governed by the APA). The purpose of a motion for rehearing "is to provide notice to the agency that the moving party is dissatisfied with its final order and that an appeal will be prosecuted if the ruling is not changed." *Suburban Util. Corp.*, 652 S.W.2d at 364. Until the party seeking judicial review exhausts its

---

[7]TEX. UTIL. CODE ANN. §§ 1.001–252.008 (West 2007 and 2016, West Supp. 2016).

[8]TEX. GOV'T CODE ANN. §§ 2001.001–.902 (West 2016).

[9]16 TEX. ADMIN. CODE § 22.1 (2016) (Pub. Util. Comm'n of Tex., Purpose & Scope).

administrative remedies, the trial court lacks subject-matter jurisdiction. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002).

### A. Isa's Appeal of the ALJ's Dismissal Order May Not Be Construed as a Motion for Rehearing

Isa does not contest (and his pleadings in the district court confirm) that the only pleading he filed after the ALJ's dismissal order was his appeal of the order pursuant to PUC rule 22.123. However, he argues in his first point of error that this pleading should be construed to be a motion for rehearing since (1) the order of the ALJ was a final order and (2) an appeal under PUC rule 22.123 serves the same purpose as a motion for rehearing under PUC rule 22.264. We disagree.

Former rule 22.181 provides two paths to arrive at the same destination, i.e., an order of the PUC that is subject to becoming a final order. The rule provides that if the presiding officer[10] determines that the proceeding should be dismissed, she may either (1) prepare a Proposal for Decision or (2) issue an order dismissing the proceeding. 16 TEX. ADMIN. CODE § 22.181(a)(3) (2016) (Pub. Util. Comm'n of Tex., Dismissal of a Proceeding). On the first path, if the presiding officer prepares a Proposal for Decision, the PUC reviews it, and then may vacate or modify the order, remand the case to the ALJ, or issue its order adopting the findings and conclusions of the ALJ and dismissing the proceedings. 16 TEX. ADMIN. CODE § 22.262 (2016) (Pub. Util. Comm'n of Tex., Comm'n Action after a Proposal for Decision). If the PUC modifies the order, or adopts the ALJ's findings and conclusions, and issues an order dismissing the proceedings, then the

_____

[10]The definition of a presiding officer under PUC rules includes an ALJ. 16 TEX. ADMIN. CODE 22.2(34) (2016) (Pub. Util. Comm'n of Tex., Definitions).

9

PUC's order is subject to becoming a final order. *See* TEX. GOV'T CODE ANN. § 2001.141(a) (West 2016).

The second path under rule 22.181 provides that the presiding officer may issue the dismissal order. In that circumstance, the rule provides an opportunity for review by the PUC through an appeal pursuant to PUC rule 22.123. 16 TEX. ADMIN. CODE § 22.181(a)(4) (2016) (Pub. Util. Comm'n of Tex., Dismissal of a Proceeding). Under rule 22.123, the Commissioners are sent separate ballots to determine whether they will consider the appeal at an open meeting. 16 TEX. ADMIN. CODE § 22.123(a)(6) (2016) (Pub. Util. Comm'n of Tex., Appeal of an Interim Order & Motions for Reconsideration of Interim Order Issued by the Comm'n). If no Commissioner votes to consider the appeal within ten days of the filing of the appeal, the appeal is deemed denied. 16 TEX. ADMIN. CODE § 22.181(a)(7)(A) (2016) (Pub. Util. Comm'n of Tex., Dismissal of a Proceeding). Since rule 22.181 authorizes the presiding officer to issue the dismissal order, when the appeal is deemed denied by the PUC, it becomes the order of the PUC and is subject to becoming a final order. *See* TEX. GOV'T CODE ANN. § 2001.141(a).

Thus, the appeal of the dismissal order serves a two-fold purpose. First, it provides an opportunity for the PUC to review the dismissal order. Second, it provides a mechanism by which the party aggrieved by the order can secure an order of the PUC that is subject to becoming a final order. Thus, the appeal of the dismissal order comes *before* the PUC order is secured. It is only *after* the aggrieved party has secured an order of the PUC that is subject to becoming a final order that a motion for rehearing under rule 22.264 becomes relevant.

As applicable to Isa's proceeding, the APA provides that an order in a contested case becomes final:

> (1)     if a motion for rehearing is not filed on time, on the expiration of the period for filing a motion for rehearing; [or]
>
> (2)     if a motion for rehearing is filed on time, on the date:
>
>> (A)     the order overruling the motion for rehearing is signed; or
>>
>> (B)     the motion is overruled by operation of law.

TEX. GOV'T CODE ANN. § 2001.144(a)(1), (2).  Further, as applicable to Isa's proceeding, only an order that becomes final as a result of the overruling of a timely filed motion for rehearing is appealable to the district court.  TEX. GOV'T CODE ANN. § 2001.145(b); *City of Port Arthur*, 13 S.W.3d at 844; *see Suburban Util. Corp.*, 652 S.W.2d at 364.

Thus, while the appeal of the ALJ's dismissal order under rule 22.123 serves the critical procedural purpose of securing a PUC order subject to becoming final, a motion for rehearing under rule 22.264 is necessarily filed after the PUC order is secured, and serves the purpose of preserving the party's right to appeal to district court.  While it is true that the procedure at the PUC to determine whether to accept an appeal pursuant to rule 22.123 is similar to the procedure used to determine whether to accept a motion for rehearing pursuant to 22.264,[11] the two come at two distinct stages of the proceeding and serve two distinct purposes.

---

[11]*Compare* 16 TEX. ADMIN. CODE § 22.123(a)(7) (Pub. Util. Comm'n of Tex., Appeal of an Interim Order & Motions for Reconsideration of Interim Order Issued by the Comm'n) *with* 16 TEX. ADMIN. CODE § 22.264(e) (2016) (Pub. Util. Comm'n of Tex., Rehearing).

In addition, as noted above, the purpose of a motion for rehearing "is to provide notice to the agency that the moving party is dissatisfied with its final order and that an appeal will be prosecuted if the ruling is not changed." *Suburban Util. Corp.*, 652 S.W.2d at 364. Further, since a motion for rehearing must state any claimed error with specificity and state the factual and legal basis of the claimed error, the agency is advised of the specific issues that will be appealed. TEX. GOV'T CODE ANN. § 2001.146(g); 16 TEX. ADMIN. CODE § 22.264(b) (2016) (Pub. Util. Comm'n of Tex., Rehearing). This gives the agency the opportunity to correct any error in its decision, or to prepare to defend it. *Suburban Util. Corp.*, 652 S.W.2d at 365. Since only a timely filed motion for rehearing preserves the moving party's right to appeal to the district court, an appeal pursuant to rule 22.123 cannot fulfill these purposes.

For these reasons, we find that Isa's appeal of the ALJ's dismissal order may not be construed as a motion for rehearing, and we overrule his first point of error.

**B.      Isa Has Not Shown that a Motion for Rehearing Would Be Futile**

In his second point of error, Isa asserts that a motion for rehearing would have been futile. He argues that since the PUC had already reviewed the ALJ's dismissal order and upheld it, it would have been pointless to file a motion for rehearing and reassert the same arguments.

Futility is an exception to the requirement that a party seeking judicial review must exhaust his administrative remedies. *Ogletree v. Glen Rose Indep. Sch. Dist.*, 314 S.W.3d 450, 454 (Tex. App.—Waco 2010, pet. denied). However, to prevail under this exception, Isa had the burden to demonstrate that the motion for rehearing would be denied. *Id.*; *see Castillo v. Tex. Bd. of Prof'l Eng'rs*, No. 03-11-00797-CV, 2014 WL 858644, at *2 (Tex. App.—Austin Feb. 28, 2014, no pet.)

12

(mem. op.) (party's unsubstantiated allegations that motion for rehearing would have been futile because of agency's bias toward him provides no basis for reversal of dismissal of suit for judicial review based on party's failure to file motion for rehearing). Further, Isa may not avoid exhausting his administrative remedies simply because he believes a motion for rehearing will not be successful. *Apollo Enters., Inc. v. ScripNet, Inc.*, 301 S.W.3d 848, 867 (Tex. App.—Austin 2009, no pet.) (citing *In re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d 327, 328–29 (Tex. 2009) (per curiam) (orig. proceeding).

Isa offers no evidence that a motion for rehearing would have been unsuccessful. Contrary to Isa's argument that a motion for rehearing would simply be changing the title of his appeal, as seen above, the appeal and the motion for rehearing serve different purposes. Although the PUC denied his appeal, a motion for rehearing would have alerted the PUC that an appeal was likely and given it the opportunity to examine the dismissal order and correct any errors. Isa may not deny the PUC this opportunity simply because he believes a motion for rehearing would be fruitless, or redundant of his appeal. We overrule Isa's second point of error.

**C.     Isa's Complaints Regarding the Deficiency of the Dismissal Order Were Not Preserved**

Next, Isa asserts that since the ALJ's dismissal order did not contain separately stated findings of fact and conclusions of law, it was not compliant with the APA and PUC rules and, therefore, was not subject to a motion for rehearing. *See* TEX. GOV'T CODE ANN. § 2001.141(b) ("A decision or order that may become final under Section 2001.144 must include findings of fact and conclusions of law, separately stated."); 16 TEX. ADMIN. CODE § 22.263(a)(2) (2016) (Pub. Util. Comm'n of Tex., Final Orders) ("A final order shall include findings of fact and conclusions

of law separately stated and may incorporate findings of fact and conclusions of law proposed within a proposal for decision."). Although Isa is correct that a final order of the PUC must include findings of fact, the lack of findings of fact will not prevent it from becoming a final order subject to a motion for rehearing. *See BFI Waste Sys. of N. Am., Inc. v. Martinez Env't Grp.*, 93 S.W.3d 570, 578–79 (Tex. App.—Austin 2002, pet. denied).

In *BFI Waste Systems*, BFI applied for a permit from the Texas Commission on Environmental Quality (the Commission) for an expansion of its landfill in east San Antonio. A group of nearby residents formed the Martinez Environmental Group (MEG) to oppose the application. *Id.* at 573. Because of MEG's opposition, the matter was referred to the SOAH for a contested case hearing. *Id.* at 574. The ALJs assigned to the case issued a proposal for decision that the permit be granted for the life of the site, issued proposed findings of fact and conclusions of law on several issues, but failed to issue findings of fact and conclusions of law on the issue of a lifetime duration of the permit. *Id.* at 574–75. The Commission issued an order that adopted the ALJs' findings of fact and conclusions of law and approved the permit for the life of the site. MEG filed a motion for rehearing in which it complained of several issues, but did not complain of the lack of findings of fact and conclusions of law regarding the lifetime permit. The motion was overruled by operation of law, and MEG filed suit for judicial review and made the same complaints asserted in its motion for rehearing. *Id.* at 575. The district court found that the Commission failed to follow its own regulations in approving the permit, including that it failed to issue findings of fact and conclusions of law on the lifetime permit, which was a contested issue. *Id.* at 575–76.

14

The Austin Court of Appeals held that since MEG did not complain in its motion for rehearing about the Commission's failure to make findings of fact and conclusions of law on the permit's lifetime duration, this issue was not preserved for review. *Id.* at 578. After noting the purpose of a motion for rehearing, the court explained that in order to preserve an error for judicial review, the motion for rehearing "must set forth: (1) the particular finding of fact, conclusion of law, ruling, or other action by the agency which the complaining party asserts was error; and (2) the legal basis upon which the claim of error rests." *Id.* (citing *Burke v. Cent. Educ. Agency*, 725 S.W.2d 393, 397 (Tex. App.—Austin 1987, writ ref'd n.r.e.)). The court pointed out that although MEG complained about the lack of findings of fact and conclusions of law in its exceptions to the ALJs' proposal for decision, it did not make that complaint in its motion for rehearing. *Id.* at 578–79. Since the complaint was not included in the motion for rehearing, "the Commission was entitled to conclude that MEG had abandoned this complaint." *Id.* at 579 (citing *Ross v. Tex. Catastrophe Prop. Ins. Ass'n*, 770 S.W.2d 641, 643–44 (Tex. App.—Austin 1989, no writ)). Since the motion for rehearing did not complain of the Commission's failure to include findings of fact and conclusions of law, the error was not preserved for review.

Thus, the lack of findings of fact and conclusions of law on the duration issue did not render the Commission's order on the duration of the permit not subject to a motion for rehearing. Rather, the aggrieved party was required to point out this defect in its motion for rehearing in order to afford the Commission an opportunity to correct the error. Similarly, in this case, even assuming the ALJ's dismissal order lacked findings of fact, Isa was required to point out this deficiency in a

15

motion for rehearing. Since he failed to do so, he has failed to preserve any error regarding the lack of findings of fact. We overrule Isa's third point of error.

**D.     PUC Rules Do Not Prevent Filing a Motion for Rehearing After Appeal of the ALJ's Dismissal Order**

Finally, Isa asserts that rule 22.123(b)(1) prevents the filing of a motion for rehearing after appealing an ALJ's dismissal order. He argues that since rule 22.123(a)(8) allows the appeal to be considered a motion for reconsideration, 22.123(b)(1) forbids a motion for rehearing. *See* 16 TEX. ADMIN. CODE § 22.123(a)(8), (b)(1) (2016) (Pub. Util. Comm'n of Tex., Appeal of an Interim Order & Motions for Reconsideration of Interim Order Issued by the Comm'n). Isa's argument is without merit.

By its plain language, section (b) of rule 22.123 applies only to interim orders issued by the PUC. 16 TEX. ADMIN. CODE § 22.123(b) (2016) (Pub. Util. Comm'n of Tex., Appeal of an Interim Order & Motions for Reconsideration of Interim Order Issued by the Comm'n) (titled "Motion for reconsideration of interim order issued by the [PUC].") Section (b)(1), upon which Isa relies, states:

> **Availability of motion for reconsideration.** Motions are available for any interim order of the [PUC] that immediately prejudices a substantial or material right of a party, or materially affects the course of the hearing, other than evidentiary rulings. Interim orders shall not be subject to exceptions prior to issuance of a proposal for decision or motions for rehearing prior to the issuance of a final order.

16 TEX. ADMIN. CODE § 22.123(b)(1) (2016) (Pub. Util. Comm'n of Tex., Appeal of an Interim Order & Motions for Reconsideration of Interim Order Issued by the Comm'n) (emphasis added). Again, by its plain language, section (b)(1) only applies to interim orders issued by the PUC,

16

including the provision that the PUC's interim orders "shall not be subject to. . . . motions for rehearing prior to the issuance of a final order." *Id.*

By contrast, section (a) of rule 22.123 applies to appeals from an interim order of a presiding officer, as well as appeals of a presiding officer's dismissal order. 16 TEX. ADMIN. CODE § 22.123(a) (2016) (Pub. Util. Comm'n of Tex., Appeal of an Interim Order & Motions for Reconsideration of Interim Order Issued by the Comm'n), § 22.181(a)(4) (2016) (Pub. Util. Comm'n of Tex., Dismissal of a Proceeding). Under section (a), at any time prior to a decision by the PUC on the appeal, the presiding officer *may* treat the appeal as a motion for reconsideration. 16 TEX. ADMIN. CODE § 22.123(a)(8) (2016) (Pub. Util. Comm'n of Tex., Appeal of an Interim Order & Motions for Reconsideration of Interim Order Issued by the Comm'n). Unlike section (b), there is no provision in section (a) that provides that an appeal from an ALJ order that is treated as a motion for reconsideration by the ALJ is not subject to a motion for rehearing. Further, as seen above and as happened in this case, if the appeal has been overruled by the PUC, it becomes an order of the PUC that is subject to becoming final and subject to a motion for rehearing.

We overrule Isa's fourth point of error.

Since Isa was required to exhaust his administrative remedies by filing a motion for rehearing and failed to do so, the trial court lacked subject-matter jurisdiction. *See Subaru of Am.,*

*Inc.*, 84 S.W.3d at 221.  Therefore, we affirm the trial court's judgment granting the pleas to the jurisdiction and dismissing Isa's appeal from the PUC.

Bailey C. Moseley
Justice

Date Submitted:     February 21, 2017
Date Decided:        May 26, 2017