# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-18-00377-CV
---

**Angela Davis, as President of NEA-Dallas (a Local Affiliate of Texas State Teachers Association), on behalf of All Affected Members and Named Individuals, Appellant**

**v.**

**Mike Morath, Commissioner of Education of The State of Texas, and Dallas Independent School District, A Public Body Corporate, Appellees**

---
### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-002145, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING
---

## O P I N I O N

This is an appeal from a judgment in a suit for judicial review of an administrative decision by the Texas Commissioner of Education. Appellants are teachers employed with the Dallas Independent School District (DISD) during the 2014-15 and 2015-16 school years. They filed a collective grievance challenging their appraisals under DISD's newly adopted teacher-appraisal system, and the Commissioner dismissed the Teachers' grievance for lack of jurisdiction. Angela Davis, the President of NEA-Dallas (a local affiliate of the Texas State Teachers Association), then filed suit for all affected members and named individuals (Teachers) against the Texas Commissioner of Education Mike Morath (Commissioner) and DISD. The district court affirmed the Commissioner's dismissal, and the Teachers appealed.

In three issues, the Teachers contend that the district court erred in affirming the Commissioner's decision because: (1) the Commissioner incorrectly determined that the Teachers' grievance was untimely; (2) the Commissioner incorrectly refused to consider and rule on the Teachers' allegations that DISD violated Texas teacher-appraisal laws when he dismissed the Teachers' appraisal grievance as untimely; and (3) the Commissioner incorrectly determined that decreasing the Teachers' salary after the start of the school year did not violate Texas law. For the reasons that follow, we conclude that the district court's judgment should be affirmed in part and reversed and remanded in part.

## BACKGROUND

The Texas Education Code requires all teachers to be appraised. Tex. Educ. Code § 21.352(c). While most Texas school districts use the teacher-appraisal process and criteria developed by the Commissioner, school districts may develop and use their own. *Id*. § 21.352(a)(2). Any district-developed appraisal process and criteria "must be based on observable, job-related behavior," including two components: "(1) teachers' implementation of discipline management procedures; and (2) the performance of teachers' students." *Id*. § 21.351.

Here, DISD adopted its own teacher-appraisal system in 2014 called the Teacher Excellence Initiative (TEI). On September 18, 2015, under its new TEI appraisal process, DISD issued a "Teacher Evaluation Scorecard" to teachers. The Scorecards issued weighted points to three evaluation components: (1) Teacher Performance; (2) Student Experience, and (3) Student Achievement. The Student Achievement component included students' performance on standardized tests, such as the State of Texas Assessment of Academic Readiness (STAAR),

which was not available until after the 2014-15 school year ended. The record contains a sample

Scorecard:



Davis, et al v. Dallas ISD
TEA bates #: 001412

After the students' standardized test scores were disclosed in the summer, DISD weighted the scores for each of the three teacher-evaluation components and translated those weighted scores into a range of points within seven categories of Evaluation Ratings: Unsatisfactory, Progressing I, Progressing II, Proficient, Proficient II, Proficient III, and Exemplary. Using a predetermined set of percentages called a "target distribution," DISD defines what proportion of scores will be assigned to each category. The target distribution for Evaluation Ratings is set to designate 3% of teachers as Unsatisfactory, 12% of teachers as Progressing I, 25% of teachers as Progressing II, 40% of teachers as Proficient I, 12% of teachers as Proficient II, 6% of teachers as Proficient III, and 2% of teachers as Exemplary. The sum of points from all three evaluation components is listed on a Scorecard for the first time as a teacher's numerical Evaluation Score.

The Scorecards, also for the first time, notified teachers of their designated Effectiveness Level, which correlated with compensation increases under TEI's pay-for-performance model and determined the salary that the teacher would receive for the 2015-16 school year. Effectiveness Levels are designed to provide context for a teacher's evaluation scores over a two-year period, but because TEI was newly implemented in 2015, only one year of information was to be considered for a teacher's Effectiveness Level in the first Scorecard. Also during the first year of implementation, certain TEI rules limited the highest Effectiveness Level category that some teachers could attain.[1]

---

[1] For example, teachers with just one year of experience were to be classified as Progressing I, teachers with less than three years' experience could not be classified as Proficient I, and teachers with three or more years' experience who did not complete a Distinguished Teacher Review process could not be classified higher than Proficient I.

On October 2, 2015, within ten district-business days of receiving their Scorecards, the Teachers filed a grievance with DISD alleging that "each of the Scorecards [was]": unwarranted and unjustified, without factual basis or merit, based upon improper criteria including unreliable District-promulgated standardized test scores, based on other unreliable data, violative of each teacher's right to due process, violative of Texas school laws, detrimental to the teachers by undermining and impairing their effectiveness, conducted in an improper and unlawful manner, and arbitrary, capricious, demeaning, and unprofessional. Based on those stated complaints about the Scorecards, the Teachers further alleged that "the entire TEI instrument and process as a whole is inequitable, arbitrary, capricious, subjective, and unlawful" and that the TEI instrument and process have a disparate negative impact on more experienced teachers and new teachers.

The Teachers also contended specifically that

- under the TEI system, teachers are not given a final evaluation during the appraisal school year; rather, teachers receive this information only after the school year ends;

- calculation of the Student Achievement section of the Scorecard, which is based on a three-matrix formula, is not provided to teachers, thus, they were evaluated on information not provided to them in a timely manner or at all;

- calculation of the Scorecard was influenced by other unknown factors, including formulae that are arbitrary and capricious; and

- the resulting effect on each Grievant's compensation constitutes a breach of the Grievant's contract of employment and/or an unlawful demotion without due process of law which has caused and will continue to cause the Grievant monetary harm.

The Teachers filed an amended grievance on October 14, 2015, contending additionally that "TEI wrongfully attempts to circumvent the teacher's right to rebut documentation and the right to file a grievance"; that "DISD has created a moving target, changing the metrics for bonus to

5

stay within a defined budget which wrongfully deprives qualified teachers of increases in pay"; and that "no teachers received cost-of-living increases."

The Teachers had two administrative grievance hearings. During the initial hearing before DISD's hearing officer, DISD's counsel admitted, "Their grievance is timely as to their overall effectiveness level. The District concedes that." However, the hearing officer's decision letter made no reference to DISD's concession about the timeliness of such grievance, and appellees fail to discuss the concession.

The hearing officer found that two individuals were not proper parties to the Teachers' grievance and that the Teachers' requested relief should be denied in part and granted in part. The hearing officer granted the Teachers' request that they would not suffer any retaliation for filing the grievance but denied all their remaining substantive requests: (1) to have the Scorecards rescinded, removed, or revised; (2) to make the documents, information, and formula calculation used in the final evaluation "fair and equitable" to all teachers; (3) for an investigation into the efficacy and fairness of the TEI system; and (4) for DISD to return to the prior teacher-appraisal system known as Professional Development and Appraisal System (PDAS) during that investigation. The hearing officer concluded that "[t]he student achievement metrics and target distribution are not arbitrary, capricious, in bad faith, or in violation of District policy, state or federal law" and stated, "To the extent that the Grievants complain of decisions or actions of Dallas ISD that were known, or should have been known, to them prior to September 18, 2015 [the date they received their Scorecards]," their "grievance is denied and dismissed as untimely."

The Teachers then appealed to a three-member subcommittee of the DISD Board of Trustees. At this hearing, one school-board member sought confirmation from Betsy Cook,

6

the TEI Operations Manager, about whether the Teachers had received "the other part of their appraisal" on September 18 in their Scorecards, which Cook confirmed was "correct." At the conclusion of the hearing, the other two members of the school-board subcommittee decided that the Teachers' grievance was untimely filed. But the subcommittee's decision made no reference to the Teachers' grievance being dismissed. Rather, the two-member majority of the subcommittee determined that the hearing officer's fact findings and decision "should be affirmed" and that the Teachers' appeal of their grievance was denied.

The Teachers next filed a petition for review with the Commissioner, who appointed an administrative law judge (ALJ) to hear the appeal of the Teachers' grievance. For the first time, DISD filed a plea to the jurisdiction and motion to dismiss. The ALJ issued a proposal for decision with findings of fact and conclusions of law and determined that the Teachers' "cause should be dismissed for a lack of jurisdiction." The Teachers filed timely exceptions to the ALJ's proposal for decision.

The Commissioner adopted the ALJ's findings and conclusions, determined that he lacked jurisdiction to hear the administrative appeal, and issued a decision dismissing it.[2] The Teachers filed a motion for rehearing that was overruled by operation of law. The Teachers then sought judicial review in a Travis County district court, which ultimately affirmed the Commissioner's decision dismissing the appeal for want of jurisdiction. The Teachers filed a motion for new trial that was denied by operation of law. This appeal followed.

---

[2] The Texas Education Commissioner's designee issued the decision.

**DISCUSSION**

The Teachers contend that the Scorecards they received in September of 2015 were their complete and final appraisals for the preceding school year and thus, violated section 21.352(c) of the Education Code, which requires school districts to appraise teachers at least once during the school year. *See* Tex. Educ. Code § 21.352(c). Further, the Teachers state that they were harmed by the issuance of the Scorecards in the fall of 2015, purporting to inform them of their performance for the prior school year, when the Teachers were contractually bound to remain employed with DISD. Specifically, Angela Davis testified that teachers were deprived of the opportunity to resign because they did not receive their final evaluation Scorecards until the middle of September, and teacher resignations must be submitted 45 days before the first day of instruction with the school district. *See id*. §§ 21.105, 21.160, 21.210 (addressing resignations for teachers under probationary, continuing, or term contracts).

DISD responds that a Scorecard is not the teacher's "appraisal" for the 2014-15 school year under section 21.352(c); rather the Scorecard is the teacher's "overall effectiveness level." According to DISD, the appraisal contemplated by section 21.352(c) refers only to the teacher's "summative annual appraisal" conducted during the school year. The Commissioner contends that compliance with section 21.352(c) is not required—i.e., DISD need not appraise teachers at least once during the school year—because the statute is merely directory.

As a preliminary matter, we address DISD's and the Commissioner's contentions that the Teachers' exceptions to the proposal for decision and the Teachers' motion for rehearing failed to preserve any error for appeal.

8

**Exceptions to PFD preserved most error, however continuing-violation complaint is waived**

DISD complains that the Teachers failed to preserve their complaints for judicial review by filing inadequate exceptions to the ALJ's proposal for decision (PFD). Relying on Rule 157.1059(d)-(e) of the Texas Administrative Code, DISD contends that the Teachers' disagreements with the PFD were not specifically and concisely stated, resulting in waiver of those disagreements. Rule 157.1059(d)-(e) provides that:

> (d) All disagreements with the factual findings and legal conclusions of the proposal for decision must be made in the parties' exceptions to the proposal for decision or be waived.

> (e) The exceptions shall be specifically and concisely stated. The evidence relied upon shall be stated with particularity, and any evidence or arguments relied upon shall be grouped under the exceptions to which they relate.

19 Tex. Admin. Code § 157.1059(d)-(e) (2015) (Tex. Educ. Agency, Filing of Exceptions and Replies to Proposal for Decision). This Rule was promulgated "to ensure full presentation of all disagreements with the proposal for decision." Tex. Educ. Agency, Adopted Rules, 29 Tex. Reg. 6887, 6892 (2004) (notes on former section 157.1058, "Filing of Exceptions and Replies to Proposal for Decision," repealed, updated, and adopted new as section 157.1059).

Rule 157.1059(e) requires a party's exceptions to be specific, and if the exceptions rely on evidence, that evidence also must be stated with particularity. 19 Tex. Admin. Code § 157.1059(e). Unlike the rule for exceptions to a PFD in proceedings before the State Office of Administrative Hearings—which provides that such exceptions are permissive—Rule 157.1059(d)-(e) requires disagreements with the PFD to be made or such disagreements are waived. *Compare* 1 Tex. Admin. Code § 155.507(b) (2015) (State Office of Admin. Hearings, Proposals for Decision; Exceptions and Replies) (providing that parties "may" submit exceptions

9

to proposal for decision), *with* 19 Tex. Admin. Code § 157.1059(d); *see Alphonso Crutch Life Support Ctr. v. Williams*, No. 03-13-00789-CV, 2015 Tex. App. LEXIS 12151, at *17-18 n.7 (Tex. App.—Austin Nov. 30, 2015, no pet.) (mem. op.) (noting party's concession that it "missed its deadline for objections" to PFD).

Here, it is undisputed that the Teachers' exceptions to the PFD were timely, but the Commissioner determined that some of the Teachers' exceptions to the PFD were deficient.[3] On appeal, DISD complains that the Teachers made deficient exceptions disagreeing with the PFD's statements that: their grievance was untimely (exceptions nos. 1, 4, 6, 7, 15, and 19); there was no complaint about improperly calculated Scorecards (exception no. 8); they failed to exhaust administrative remedies about DISD's policy (exception no. 18); their grievance was dismissed (exception no. 2); there was no complaint about DISD reducing any payment for teacher insurance (exception no. 21); and there was no basis for the cost-of-living claims (exceptions nos. 20, 22). DISD points to a sentence included in several of the Teachers' exceptions, claiming that certain statements in the PFD were "in direct contradiction to the evidence in the record" but not identifying any evidence showing the alleged contradiction. However, there was more to each of the Teachers' exceptions than that single quoted sentence.

For each of these exceptions, the Teachers explained why they contended that particular statements in the PFD were inaccurate and contrary to the record:

- In response to the PFD's statements that the Teachers' claims were untimely, that they did not complain about Scorecard calculation, and that they did not exhaust administrative remedies about DISD's policy, the Teachers' exceptions noted that: (1) their claims were timely filed within ten days of receiving their Scorecards in the fall of 2015; (2) their grievance arose from the Scorecards and the manner in which the

---

[3] The Commissioner's Decision states that "[e]xceptions and replies were timely filed and considered."

Teachers were appraised but not from school board policy; (3) their claims were not ripe before receipt of the Scorecards; and (4) the district waived its right to claim untimeliness.

- In response to the PFD's statement that the Teachers' claims were dismissed "at all levels of the grievance policy," the Teachers' exceptions noted that the school district's board of trustees did not dismiss their grievance.[4]

- In response to the PFD's statement that the Teachers did not complain about any reduction in DISD's insurance payment, the Teachers noted that: (1) DISD offered no evidence of the amount it paid for the Teachers' insurance; (2) the increased cost of pretax deductions was taken from their salaries; (3) the result was a reduction in their overall compensation; and (4) they provided pay stub information reflecting the reduction in compensation.

As to the Teachers' exception to PFD's statement that there was no basis for their cost-of-living claims, we note that the Commissioner specifically found similar exceptions (nos. 10 and 23) as to the Teachers' cost-of-living claims did include proper identification of the evidence that the Teachers relied upon.

DISD further complains that the Teachers made deficient exceptions alleging that their claims were not ripe until the Scorecards issued in the fall of 2015. Specifically, DISD states that the Teachers' exceptions numbered 1, 6, 7, 11, 15, 18, and 19 fail to identify a factual or legal basis for the Teachers' assertion of unripeness. However, the Teachers' exception number 4 to the PFD explains that the claims in their grievance were not ripe until the Scorecards were issued in the fall of 2015 because the violations of law alleged in the grievance arose "from the TEI system as implemented in the Scorecards" and that "any dispute regarding the manner in which the appraisal occurred would have been premature" until then.

---

[4] DISD does not complain of the Teachers' exception number 13 challenging the PFD's statement that the Teachers' grievance was dismissed.

11

Additionally, DISD complains that none of the Teachers' exceptions "stated with particularity" any legal deficiency in the PFD, and that certain exceptions vaguely allege that statements in the PFD are "in direct contradiction to the school laws of this state, other laws of this state, past case law and commissioner's decision" (exceptions nos. 17 and 24-32) without alerting the Commissioner to the Teachers' complained-of error.

In exceptions numbered 24 through 32, the Teachers claimed that the Commissioner's stated propositions lacked legal support. To address these exceptions, the Teachers incorporated arguments and authorities previously cited in their briefing. The Teachers' reference to their briefing is general, but it is not, as DISD suggests, the equivalent of a request to incorporate the entire administrative record. *Cf. Burke v. Central Educ. Agency*, 725 S.W.2d 393, 399 (Tex. App.—1987, writ ref'd n.r.e.) (concluding that motion for rehearing incorporating by reference "the papers and records on file in this cause" was insufficient to obtain judicial review because motion "argue[d] for an adoption of the entire administrative record").

By contrast, the Teachers' exception number 17—concerning the PFD's rejection of the continuing-violation doctrine as a justification for a late-filed grievance—complains only that, "This statement is in direct contradiction to the school laws of this state, other laws of this state, past case law, and commissioner's decisions." The rest of this exception states only that the "ALJ has erred and the finding should be removed from the decision." Thus, we agree with DISD that this exception fails to state "with particularity" any legal deficiency in the PFD. Because of this deficient exception, the Teachers waived their complaint as to the applicability of the continuing-violation doctrine. *See* 19 Tex. Admin. Code § 157.1059(d)-(e).

12

As to the remainder of the Teachers' exceptions identified here, we disagree with DISD's contentions that the exceptions were conclusory, failed to alert the Commissioner to any factual error in the PFD, and failed to explain adequately any legal deficiency in the PFD to allow for correction by the Commissioner. *See id*.; *see also Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 481 (Tex. 2019) (rejecting form-over-substance approach to application of preservation rules); *Thota v. Young*, 366 S.W.3d 678, 690 (Tex. 2012) (favoring common-sense application of procedural rules rather than technical application).

**Motion for rehearing of Commissioner's decision preserved error**

The Commissioner contends that the Teachers failed to preserve their complaints for judicial review by filing an inadequate motion for rehearing challenging the Commissioner's decision. Specifically, the Commissioner contends that the Teachers' motion failed to state with particularity the legal basis for their claimed error.

A motion for rehearing is a statutory prerequisite for appeals from a Commissioner's decision. Tex. Gov't Code § 2001.145(a); 19 Tex. Admin. Code § 157.1061(a) (2016) (Tex. Educ. Agency, Motions for Rehearing); *see BFI Waste Systems of North America, Inc. v. Martinez Envtl. Grp.*, 93 S.W.3d 570, 578 (Tex. App.—Austin 2002, no pet.) (addressing necessity of motions for rehearing in contested cases generally). The purpose of a motion for rehearing is to apprise the agency of the claimed error and provide the agency with an opportunity to correct the error or prepare to defend against it. *Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 365 (Tex. 1983); *BFI*, 93 S.W.3d at 578. A timely filed motion for rehearing is jurisdictional, but the sufficiency of the motion's content pertains only to preservation of error. *BFI*, 93 S.W.3d at 578.

Motions for rehearing must set forth: (1) the particular finding of fact, conclusion of law, ruling, or other agency action that is the basis of the party's complaint; and (2) the legal and factual bases for the complained-of error. Tex. Gov't Code § 2001.146(g); *BFI*, 93 S.W.3d at 578 (citing *Burke*, 725 S.W.2d at 397). It is insufficient to set forth these two elements in generalities, for example, by complaining that the findings as a body, or the conclusions as a whole, are not supported by substantial evidence. *Scally v. Texas State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 445 (Tex. App.—Austin 2011, pet. denied); *Burke*, 725 S.W.2d at 397. Preservation of error requires both elements to be present in the motion, but neither element requires briefing of the law and the facts. *BFI*, 93 S.W.3d at 578; *Burke*, 725 S.W.2d at 397. The standard is one of fair notice. *Scally*, 351 S.W.3d at 445; *BFI*, 93 S.W.3d at 578.

Here, the Commissioner states that he made three "key" conclusions of law, namely that: (1) he lacks jurisdiction over this case under Texas Education Code section 7.057; (2) the Teachers' grievance claims are untimely; and (3) ultimately, the cause should be dismissed for lack of jurisdiction. The Commissioner contends that the Teachers' motion for rehearing provided an inadequate response to these three conclusions by raising only general complaints that those conclusions were "in direct contradiction to the school laws of this state, other laws of this state, past case law, and commissioner's decision in the record" and "contrary to the arguments and authorities cited in Petitioners' briefing."

However, the Teachers' motion for rehearing provided fair notice of complaints concerning the Commissioner's decision. The Teachers directed their complaints in the motion to the preamble, discussion, and specifically numbered findings and conclusions in the Commissioner's decision. The Teachers responded to the Commissioner's conclusions that he

14

lacked jurisdiction under section 7.057 of the Education Code, that the Teachers' grievance was untimely, and that dismissal was proper, including four pages detailing complaints that:

(1)     the Scorecards resulted from a local teacher-appraisal system that violated Texas school laws requiring teacher appraisals to be conducted annually and in accordance with sections 21.351-21.352 of the Education Code;

(2)     the grievance was erroneously dismissed as untimely because the Teachers filed it on October 2, 2015, within ten days of receiving their Scorecards; and

(3)     dismissal for lack of jurisdiction was not warranted as argued on pages 21-23 of the Teachers' response to DISD's plea to the jurisdiction and motion to dismiss.

Thus, the Teachers' motion provided the Commissioner with far more specific information than that set forth in the three particular responses that the Commissioner identified. *See Scally*, 351 S.W.3d at 445. Further, the substance of the Teachers' motion for rehearing is unlike those found inadequate by Texas courts and resulting in waiver. *See, e.g.*, *Texas Alcoholic Bev. Comm'n v. Quintana*, 225 S.W.3d 200, 204 (Tex. App.—El Paso 2005, pet. denied) (concluding that permit holder who "did not challenge any of the specific factual findings forming the basis of the Commission's decision to cancel her permit and license" waived her complaint); *Hamamcy v. Texas State Bd. of Med. Exam'rs*, 900 S.W.2d 423, 425 (Tex. App.—Austin 1995, writ denied) (concluding that doctor's motion for rehearing consisting entirely of statement that "the presentation of the discussion at the hearing will be done from the charts of the patients and from the records on file with the Board" constituted no motion for rehearing at all); *Burke*, 725 S.W.2d at 398-99 (concluding that teacher's motion for rehearing failed to preserve error because it did not point to any particular finding of fact or conclusion of law, did not identify legal principles referred to, and complained of Board's action that was unsupported by record); *see also Morgan v. Employees' Ret. Sys. of Tex.*, 872 S.W.2d 819, 822

15

(Tex. App.—Austin 1994, no writ) (concluding that party's motion for rehearing "achieve[d] its purpose" of sufficiently informing agency of alleged errors); *cf. Scally*, 351 S.W.3d at 435 (rejecting agency's complaint as to inadequacy of motion for rehearing).

Because this motion for rehearing provided the Commissioner with fair notice of the Teachers' complaints, we conclude that the Teachers' motion sufficiently preserved error. *See Scally*, 351 S.W.3d at 445; *BFI*, 93 S.W.3d at 578. Having concluded that the Teachers did not waive their complaints—except as to the applicability of the continuing-violation doctrine— we consider the Teachers' appellate issues.

**First issue: Commissioner's determination that he lacked jurisdiction**

In their first issue, the Teachers contend that the district court erred in affirming the Commissioner's decision because the Commissioner incorrectly determined that he lacked jurisdiction over the appeal of a grievance that he considered untimely.

Section 7.057 of the Texas Education Code governs appeals from a local school district to the Commissioner. *See* Tex. Educ. Code § 7.057. It authorizes such an appeal when a person is aggrieved by an action or decision of a school district board of trustees that violates: (1) Texas school laws, or (2) a school-district employee's written employment contract with the school district, if such violation causes or would cause monetary harm. *Id*. § 7.057(a). Texas school laws consist of titles 1 and 2 of the Texas Education Code and the administrative rules adopted under those titles. *Id*. § 7.057(f)(2). Subsection (c) of the statute requires the Commissioner to "issue a decision based on a review of the record developed at the district level under a substantial evidence standard of review." *Id*. § 7.057(c); *see* 19 Tex. Admin. Code § 157.1073(h) (providing rules for hearings under section 7.057 of Education Code and

16

specifying that Commissioner reviews board of trustees' decisions under substantial-evidence standard), (k) (adopting provisions of Administrative Procedure Act "for all purposes").

On appeal, we apply a substantial-evidence standard in reviewing the district court's judgment as to the Commissioner's factual determinations. *Tijerina v. Alanis*, 80 S.W.3d 292, 295 (Tex. App.—Austin 2002, pet. denied); *see Houston Indep. Sch. Dist. v. Simpson*, No. 03-12-00145-CV, 2013 Tex. App. LEXIS 13581, at *7 (Tex. App.—Austin Nov. 1, 2013, no pet.) (mem. op.). Under this standard, we presume that the Commissioner's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the contestant has the burden of proving otherwise. *See Tijerina*, 80 S.W.3d at 295 n.5; *see also Simpson*, 2013 Tex. App. LEXIS 13581, at *8. We determine whether the evidence as a whole in the disputed action is such that reasonable minds could have reached the same conclusion as the Commissioner. *See Tijerina*, 80 S.W.3d at 295 n.5; *Simpson*, 2013 Tex. App. LEXIS 13581, at *8; *see Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.) ("Essentially, this is a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record."). However, the Commissioner's resolution of legal questions—unlike his factual determinations—are not entitled to a presumption of validity, and we review them de novo. *Weslaco Fed'n of Teachers v. Texas Educ. Agency*, 27 S.W.3d 258, 263-64 (Tex. App.—Austin 2000, no pet.); *Simpson*, 2013 Tex. App. LEXIS 13581, at *8.

Here, the Commissioner determined that the dispute between the District and Teachers was outside of his subject-matter jurisdiction. We review the Commissioner's decision as to jurisdiction under the same standard used to review a trial court's order dismissing a cause for want of jurisdiction. *Tijerina*, 80 S.W.3d at 295; *Simpson*, 2013 Tex. App. LEXIS 13581, at *8. When, as here, the Commissioner makes fact findings necessary to resolve the jurisdictional

17

issue based on an evidentiary record developed through an adjudicative process, we review such fact findings under a substantial-evidence standard. *See Tijerina*, 80 S.W.3d at 295 (noting that "substantial-evidence review may be appropriate when examining the Commissioner's decisions based on evidence relevant to jurisdiction"); *Simpson*, 2013 Tex. App. LEXIS 13581, at *8.

Under the substantial-evidence standard, the Commissioner examines the record to determine whether the school board's decision resulted from a prejudicial error of law, such as an abuse of discretion, an action taken in excess of authority, a violation of law, or fact findings that are unreasonable in light of the evidence found in the record of proceedings before the school board. *Ysleta Indep. Sch. Dist. v. Meno*, 933 S.W.2d 748, 751 n.5 (Tex. App.—Austin 1996, writ denied); *see* Tex. Gov't Code § 2001.174. The Commissioner is restricted to the record before him and may not re-weigh the evidence, find facts, or substitute his judgment for that of the school board regarding matters properly within the board's discretion. *Meno*, 933 S.W.2d at 751 n.5. If the jurisdictional inquiry turns on an interpretation of the Education Code, we defer to the Commissioner's interpretation of that statute, to the extent that the statute is ambiguous, so long as the Commissioner's interpretation is reasonable and does not contradict the plain language of the statute. *Tijerina*, 80 S.W.3d at 295; *see also Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (noting that ambiguity is "a precondition to agency deference"); *Simpson*, 2013 Tex. App. LEXIS 13581, at *8-9.

DISD's grievance policy, as set forth in DGBA (Local) Employee Complaints/Grievances, requires grievances to be filed "no later than ten days[5] from the date the employee first knew, or with reasonable diligence, should have known of the decision or

_____

5 This policy defines "days" as "District business days in accordance with the Districtwide staff calendar, unless otherwise noted."

18

action giving rise to the grievance or complaint." This policy also states that an untimely grievance "shall be dismissed, on written notice to the employee, at any level during the grievance process" and that "[a]ll time limits for filing grievances shall be strictly enforced." Applying this policy, the Commissioner issued findings of fact determining that the appeal of the grievance was untimely as to the components of TEI and as to the appraisals:

5. Petitioners' challenges to the components of the Teacher Excellence Initiative (TEI) program were not filed within ten business days of Petitioners learning of the components or of when Petitioners with reasonable diligence should have known of the components.

6. Individual Petitioners' challenges to their appraisals were not filed within ten business days of Petitioners learning of the potentials [sic] errors in the process or of when Petitioners with reasonable diligence should have known of the potential errors.[6]

While an employee's untimely grievance under DISD's local policy might result in dismissal or waiver because the employee's claim was not properly preserved for review, here the Commissioner determined that the Teachers' filing of an untimely grievance at the school-district level of the administrative process constituted a failure to exhaust administrative remedies that deprived him of jurisdiction over the Teachers' appeal from the school board's decision. We disagree.

The Education Code, in relevant part, unambiguously authorizes an appeal to the Commissioner when a person is aggrieved by: (1) Texas school laws; or (2) actions or decisions of any school district board of trustees that violate Texas school law. Tex. Educ.

---

[6] This is a misstatement of DISD's grievance policy as set forth in its DGBA (Local) Employee Complaints/Grievances, which says nothing about "potential errors." As we have noted, the policy addresses only *decisions* or *actions*, requiring grievances to be filed "no later than ten days from the date the employee first knew, or with reasonable diligence, should have known of the decision or action giving rise to the grievance or complaint."

Code § 7.057(a). The Commissioner may not, through his rules or policies, narrow the availability of that appeal. *Texas Comm'r of Educ. v. Solis*, 562 S.W.3d 591, 602 (Tex. App.—Austin 2018, pet. filed). Nothing in section 7.057(a) requires the filing of a timely grievance with a school district to invoke the Commissioner's jurisdiction over an appeal in which a person claims to be aggrieved by Texas school laws or by actions or decisions of a school board that violate Texas school law. *Cf.* Tex. Educ. Code § 7.057(a). By imposing such a jurisdictional prerequisite—based on a nonstatutory administrative deadline in DISD's policy—the Commissioner impermissibly narrowed the availability of the Teachers' statutory right to appeal to the Commissioner. *See Solis*, 562 S.W.3d at 602. Thus, the Commissioner erred by determining that he lacked jurisdiction over the Teachers' appeal of their grievance and that dismissal was necessary.

Notwithstanding that error, the applicable standard of review requires us to consider whether substantial evidence supports the Commissioner's decision to dismiss the Teachers' appeal of their grievance as untimely or to dismiss the appeal on some other reasonable basis in this record. "Under substantial evidence review of fact-based determinations, '[t]he issue for the reviewing court is not whether the agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action.'" *AEP Tex. Cent. Co. v. Public Util. Comm'n of Tex.*, 345 S.W.3d 60, 68 (Tex. 2011) (quoting *State v. Public Util. Comm'n of Tex.*, 344 S.W.3d 349, 355 (Tex. 2011)); *Jenkins*, 537 S.W.3d at 149 ("Ultimately, we are concerned not with the correctness of the agency's decision, but its reasonableness."). Here, the Commissioner found that: (1) the Teachers' appraisal grievance was untimely; and (2) the Teachers' grievance as to components of the TEI program were untimely. We address each of these findings in turn.

20

### 1. Commissioner's determination that Teachers' appraisal grievance was untimely

The Commissioner determined in Finding of Fact No. 6 that "Individual Petitioners' challenges to their appraisals were not filed within ten business days of Petitioners learning of the potentials [sic] errors in the process or of when Petitioners with reasonable diligence should have known of the potential errors."[7] Whether the Teachers' grievance is timely depends not on "potential errors," but rather on what "decision or action" gave rise to their grievance and triggered the ten-day filing deadline.

The Teachers contend that the "decision or action" giving rise to their grievance was their receipt of the Scorecards on September 18, 2015. In their view, the Scorecard was the only possible complete appraisal document that the Teachers received for the 2014-15 school year. They note that the Scorecards for the first time: (1) accounted for the portion of the student performance component that is based on the students' standardized test scores received in the summer, and (2) notified teachers of their weighted point totals resulting in their final evaluation scores and ratings. Thus, the Teachers contend that their grievance was timely because it was filed within ten district business days of receiving their complete appraisals in the Scorecards.

#### a. DISD's contention that appraisal grievance was untimely

DISD disputes that the Scorecard is the "appraisal" contemplated by section 21.352(a) of the Education Code. DISD contends that the summative annual appraisal conducted during the 2014-15 school year is the "appraisal" contemplated by the statute and that the Teachers' grievance filed on September 18, 2015, is untimely.[8] The summative annual appraisal

---

[7] *See* footnote 6.

[8] DISD explained this deadline at oral argument: "If the complaint is about their appraisal, which Dallas ISD has always alleged is their summative annual appraisal—that is what

is based on a "teacher performance rubric" that considers nineteen indicators of teacher practice. Those nineteen indicators of teacher practice are split into four major "domains": (1) planning and preparation (e.g., whether the teacher demonstrates content knowledge and develops objective-based lesson plans); (2) instructional practice (e.g., whether the teacher establishes clear and rigorous lesson objectives and encourages higher-order thinking skills); (3) classroom culture (e.g., whether the teacher maximizes instructional time and maintains a welcoming environment); and (4) professionalism and collaboration (e.g., whether the teacher engages in professional community and establishes relationships with families). DISD notes that teachers receive scores on the summative annual appraisal at different times during the school year, as well as scores for the Student Learning Objective and the student surveys, which complete all three of TEI's teacher-evaluation components. DISD further suggests that if a teacher did not have an appraisal by the end of the school year, the omitted appraisal should have triggered the teacher's ten-day deadline for filing a grievance.

However, as we have noted, DISD's grievance policy DGBA (Local) Employee Complaints/Grievances requires grievances to be filed "no later than ten days from the date the employee first knew, or with reasonable diligence, should have known of the *decision or action* giving rise to the grievance or complaint." (Emphases added.). DISD does not explain how its *omission* of an appraisal by the end of the school year constitutes a "decision or action" triggering the need for a teacher to file a grievance under the plain language of this policy. *See Aleman v. Texas Med. Bd.*, 573 S.W.3d 796, 808 (Tex. 2019) (Blacklock, J., concurring) (noting "familiar distinction between acts and omissions"). The Commissioner's decisions routinely

---

is the appraisal defined by 21.352—it's ten, it's ten district business days from when they knew or should have known of the results of their appraisal."

22

identify "actions" and "decisions" as triggering events for "ripeness" in relation to the timely filing of *administrative appeals and grievances*—as the Teachers have framed the issue here. *See, e.g.*, *Simani v. Houston Indep. Sch. Dist.*, Docket No. 021-R10-03-2019, 2019 Tx. Educ. Agency LEXIS 61, at *15 (Aug. 30, 2019) (concluding that teacher's grievance was untimely and that "[t]he moment Petitioner received the contract which she believed was incorrect, Petitioner's claim was ripe"); *Dallas Indep. Sch. Dist. v. Walton*, Docket No. 052-LH-1200, 2001 Tx. Educ. Agency LEXIS 33, at *14 (Mar. 1, 2001) ("However, this matter is not ripe for decision, in that Teacher has not yet been recommended for suspension for the next school year."); *Gibson v. Waco Indep. Sch. Dist.*, Docket No. 107-R8-598, 1998 WL 36016038, at *4 (Nov. 6, 1998) (concluding "in the absence of an actual decision" that "this matter is not yet ripe for review by the Commissioner").

Additionally, DISD's contention that the Scorecard is not the teacher's annual appraisal is contrary to previous administrative cases. *See, e.g.*, *Harris v. Dallas Indep. Sch. Dist.*, Docket No. 098-R-1-0712, 2012 Tx. Educ. Agency LEXIS 59, at *49 (Aug. 29, 2012) (referring to teacher's "annual evaluation scorecard" in undisputed facts); *Dallas Indep. Sch. Dist. v. Fisher*, Docket No. 145-LH-805, 2005 Tx. Educ. Agency LEXIS 43, at *19 (Nov. 15, 2005) (referring to "annual professional school counselor performance scorecard"); *see also Steans v. Manor Indep. Sch. Dist.*, Docket No. 081-R1-08-2014, 2014 Tx. Educ. Agency 73, at *14-15 (Oct. 7, 2014) (rejecting contention that written annual "evaluations" in another section of Education Code refer exclusively to summative annual appraisals and not to all components of teacher appraisal).

The TEI Scorecards consist of three evaluation components. These three components, and parenthetical definitions for each, are set forth in the TEI Rulebook that DISD

23

issued in January 2015 and Guidebook that DISD issued in March of 2015. The three components are:

1. Teacher performance (rubric–based observation of instruction)

2. Student achievement (evaluation of student assessment scores or results) [and]

3. Student perceptions (student survey results)[.][9]

As the sample Scorecard in this opinion shows, the student-achievement component consists of a Student Learning Objective score that is provided to teachers during the school year and student performance on standardized tests like the STAAR, which is not disclosed until the summer. Thus, the Scorecard includes both the teacher performance and student performance criteria that are required by the Education Code for a teacher "appraisal" under a district-developed appraisal process. *See* Tex. Educ. Code § 21.351(a)(2); *see also id.* § 21.352(a)(2)(B) (requiring local appraisal process to implement provisions of sections 21.351(a)(1)-(2)).

Unlike the Scorecard, the summative annual appraisal measures only teacher performance, and is a "rubric-based observation of instruction." According to the Rulebook, the rubric is "[t]he evaluation instrument that outlines teacher performance standards." Similarly, the Guidebook specifies that the nineteen indicators factoring into a summative annual appraisal are "indicators of teacher practice." By contrast, the Guidebook specifies that the student-achievement component—i.e., the evaluation of student-assessment scores or results—for all teachers is measured by the Student Learning Objective and school STAAR (and may also include other standardized assessments for some teachers, depending on the courses taught).

---

[9] The subsequent TEI Rulebook shows that on July 29, 2015, this component's name was changed from "Student Perceptions" to "Student Experience."

Nothing in the Rulebook or Guidebook states that the student-achievement component is measured by the summative annual appraisal. Without the requisite student-performance criteria, a document cannot be considered an "appraisal" under the Education Code. *See id*. § 21.351(a)(1)-(2).

Moreover—contrary to DISD's contention that all components of a teacher's evaluation were completed at various times during the 2014-15 school year—the Education Code indicates that the teacher's appraisal or evaluation is a single document, not a series of components completed during the year. And unless the teacher agrees otherwise in writing,[10] that appraisal must be done at least once during the school year. Section 21.352(c) of the Education Code provides, in relevant part:

> Except as otherwise provided by this subsection, appraisal *must* be done *at least once during each school year*. A teacher may be appraised less frequently if the teacher agrees in writing and the teacher's most recent evaluation rated the teacher as at least proficient, or the equivalent, and did not identify any area of deficiency. A teacher who is appraised less frequently than annually must be appraised at least once during each period of five school years. The district shall maintain a written copy of the evaluation of each teacher's performance in the teacher's personnel file. Each teacher is entitled to receive a written copy of the evaluation promptly on its completion. After receiving a written copy of the evaluation, a teacher is entitled to a second appraisal by a different appraiser or to submit a written rebuttal to the evaluation to be attached to the evaluation in the teacher's personnel file. The evaluation and any rebuttal may be given to another school district at which the teacher has applied for employment at the request of that district.

Tex. Educ. Code § 21.352(c) (emphases added). This statute refers to only one written document ("the evaluation") that upon completion is retained in the teacher's file. *See id*.; *see also Hall v. North E. Indep. Sch. Dist*., Docket No. 019-R10-1106, 2008 Tx. Educ. Agency LEXIS 3, at *4

---

[10] Nothing in the record shows that any of the Teachers agreed in writing to be appraised less frequently than required by section 21.352(c). *See* Tex. Educ. Code § 21.352(c).

n.2 (Sept. 8, 2008) (noting that "[t]he terms 'evaluation' and 'appraisal' are synonymous"). No reasonable reading of this statute indicates that individual components of an appraisal or evaluation are to be added periodically to a teacher's personnel file during the school year.

Further, the Guidebook provides that teachers who disagree with their "summative performance evaluation" may address such disagreements after issuance of the Scorecard with the teacher's "final evaluation rating": "A teacher may submit a written response or rebuttal after receiving a copy of the performance component of the evaluation and/or after receiving the final evaluation rating, which includes the relevant student achievement and student perception components." Although DISD currently contends that the Teachers should have filed their appraisal grievance within ten days after receiving their summative annual appraisal, and not after receiving their Scorecard, the record reflects that DISD directed at least one of the Teachers to postpone addressing any problem or question about the summative annual appraisal until after issuance of the Scorecard:

> My immediate supervisor, Stephanie Burns at Bryan Adams HS, told several of us that if we had a problem or question about our summative, WE HAD UNTIL THE ENTIRE TEI SCORECARD CAME OUT TO REBUT IT. Apparently, that is not the case and it should have been done earlier. However, whether by accident or on purpose, several of us took her at her word on this and waited. . . . Again, misinformation to me caused a delay and a simple remedy is available if desired.[11]

(Emphases in original.). The Teachers pointed to this evidence during oral argument and in their petition for review to the Commissioner. DISD offered no response to this evidence beyond

---

[11] DISD contends that equitable tolling did not apply to the filing of a grievance under DGBA (Local). But DGBA (Local) addresses the "untimely filing" of grievances and specifies that "[c]onsideration shall be given for extenuating circumstances in all cases."

representing to this Court that such matter was outside the record and merely attorney argument.[12]

After reviewing the evidence in this record, we conclude that the Commissioner could not have reasonably found, as DISD contends, that the Teachers' grievance is untimely because the summative annual appraisal, and not the Scorecard, is the "appraisal" contemplated by the Education Code.[13]

### b. Commissioner's contention that appraisal grievance was untimely

Notably, the Commissioner does not contend that the issuance of the Scorecards to the Teachers in September of 2015 complied with the statutory requirement in section 21.352(c) that teacher appraisals must be completed during the school year. *See* Tex. Educ. Code § 21.352(c). Rather, the Commissioner contends that section 21.352(c) is merely directory.[14] *But see* Tex. Att'y Gen. Op. No. GA-0055 (2003) (concluding that under section

---

[12] Counsel for DISD made the same representation to the Commissioner.

[13] The Commissioner's decision includes a narrative, but not a finding, dispensing with the appraisal-grievance claims as untimely: "As to the claims that [DISD]'s practice in individual cases violated the school laws of this state or [the Teacher]s' contracts, these issues could also have been raised when the alleged events occurred." The Commissioner also concluded that "Petitioners' claims were ripe when they were required to be filed under Respondent's policy." These generalizations do not identify when the appraisal grievance would have been ripe or what concrete injury the Teachers would have sustained before receiving the "appraisal" required by section 21.352(c) of the Education Code. *See Texas v. United States*, 523 U.S. 296, 300 (1998) (concluding that claim is not ripe for adjudication if it rests on contingent future events that may not occur as anticipated or at all); *In re Depinho*, 505 S.W.3d 621, 624 (Tex. 2016) (noting that case is unripe when determination of whether claimant has concrete injury can be made only on contingent or hypothetical facts, or on events that have not yet occurred); *see also* Tex. Educ. Code § 21.352(c).

[14] DISD diverges from the Commissioner on this issue. Counsel for DISD acknowledged during the Teachers' second grievance hearing that an annual performance evaluation is a requirement: "Now one of the first arguments [the Teachers] discussed is the fact that the Texas Education Code requires an annual performance evaluation. That is correct."

27

21.352(c) "[e]ach school district *must* use its appraisal process and criteria to evaluate each teacher in the district at least once during each school year" and that "[t]his *requirement* is not limited to beginning teachers but rather applies to all teachers in the district") (emphases added). In support of his contention that section 21.352(c) is merely directory, the Commissioner relies heavily on the statute's lack of an explicitly stated consequence for noncompliance. The Commissioner also contends that there is no harm from providing a teacher with an evaluation that is late—i.e., when no appraisal is provided during the school year—"for even a late evaluation is preferable to none at all."

The fundamental rule for determining whether a statutory provision is mandatory or directory is to ascertain and give effect to the Legislature's intent. *AC Interests, L.P. v. Texas Comm'n on Envtl. Quality*, 543 S.W.3d 703, 708 (Tex. 2018). No "absolute test" distinguishes the mandatory from the directory when the Legislature creates a statutory deadline but does not expressly set forth a penalty or consequence for noncompliance. *Id*. Factors we may consider in determining whether the Legislature intended a provision to be mandatory or directory include the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex. 1999).

The Texas Supreme Court has stated that the use of "must" in a statute is generally understood as a mandatory term, creating a duty or condition. *AC Interests*, 543 S.W.3d at 709. Similarly, the Code Construction Act states that "must" indicates a condition precedent "unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute." Tex. Gov't Code § 311.016(3). Courts generally construe a statutory provision as mandatory

when the power or duty to which it relates is for the public good. *Sinclair*, 984 S.W.2d at 961. Conversely, a statutory provision that merely promotes the proper, orderly and prompt conduct of business is not generally construed as mandatory, particularly when failure to comply with the statute will not prejudice the rights of the interested parties. *TJFA, L.P. v. Texas Comm'n on Envtl. Quality & BFI Waste Sys. of N. Am., Inc.*, 368 S.W.3d 727, 734 (Tex. App.—Austin 2012, pet. denied). When a statute is silent about consequences of noncompliance, we look to the statute's purpose in determining the proper consequence of noncompliance. *Sinclair*, 984 S.W.2d at 961. "We will not interpret silence regarding the consequences for noncompliance to undermine the statute's purpose." *AC Interests*, 543 S.W.3d at 709.

Here, although there are no statutory consequences for noncompliance expressly stated in section 21.352(c), other subsections of that statute indicate that the purpose of conducting appraisals during the school year is to ensure that teachers of all skill levels are given timely feedback on their performance, including any necessary guidance on improvement, and to allow school districts to assess teachers' progress from year to year:

> (c-1) In addition to conducting a complete appraisal as frequently as required by Subsection (c), a school district shall require that appropriate components of the appraisal process, such as classroom observations and walk-throughs, occur more frequently as necessary to ensure that a teacher receives adequate evaluation and guidance. A school district shall give priority to conducting appropriate components more frequently for inexperienced teachers or experienced teachers with identified areas of deficiency.
>
> (e) A district shall use a teacher's consecutive appraisals from more than one year, if available, in making the district's employment decisions and developing career recommendations for the teacher.
>
> (f) The district shall notify a teacher of the results of any appraisal of the teacher in a timely manner so that the appraisal may be used as a developmental tool by the district and the teacher to improve the overall performance of the teacher.

29

Tex. Educ. Code § 21.352(c-1), (e), (f). The provision in section 21.352(c) addressing teacher appraisals during the same school year furthers the community's interest in providing students with teachers who are guided in a timely manner to maximize their instructional skills, and thus, relates to the public good. *See Sinclair*, 984 S.W.2d at 961. Further, the failure to comply with this statute would prejudice the rights of the interested parties by reducing the likelihood that schools will employ the most capable teachers and consistently strengthen the teachers' expertise. *Cf. TJFA*, 368 S.W.3d at 734; *see* Tex. Educ. Code § 4.001(a) (identifying objectives of public education including recruitment, development, and retention of qualified and highly effective personnel).

Additionally, when the Legislature enacted section 21.352(c) as part of its substantive revision to Titles 1 and 2 of the Education Code, it amended the teacher-appraisal statute in former section 13.303(a). *See* Senate Research Center, Bill Analysis, Tex. C.S.S.B. 1, at 43, 74th Leg., R.S. (Mar. 27, 1995). The Legislature struck the verb "shall" from the former statute and added the verb "must" to the new statute, providing further indication of the Legislature's intent that compliance with section 21.352(c) is mandatory. *See* Engrossed Version, Tex. S.B. 1, § 21.272(b), 74th Leg., R.S. (Mar. 27, 1995) ("Appraisal must [shall] be done at least once during each school year"); *see also* 3 Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 57.1 (7th ed. 2008) (noting that form of verb used in statute, such as that something "must" be done, is "single most important textual consideration determining whether statute is mandatory or directory"). In its summary of this legislation, the Texas Education Agency stated that under the new chapter 21, a teacher-appraisal process "must provide for at least one evaluation per teacher during each school year." Texas Education

Agency, *Questions and Answers on Senate Bill 1* 14 (July 20, 1995) (Office of Governmental Relations). Given these considerations, we construe section 21.352(c)'s statement that "appraisal must be done at least once during each school year," as imposing a requirement that is mandatory.

### c. Commissioner erred in determining appraisal grievance was untimely

The administrative record before us lacks substantial evidence to reasonably conclude that: (1) DISD conducted complete appraisals, as defined in section 21.351(a) of the Education Code, for the Teachers during the 2014-15 school year; (2) providing piecemeal components of an appraisal during the school year to the Teachers constituted "the evaluation" under section 21.352(c) of the Education Code; and (3) the Teachers' grievance—filed within ten days after the Teachers "knew or should have known" of the appraisal decisions or actions in the Scorecard that formed the basis of their grievance—was untimely. Thus, we conclude that there was no reasonable basis in this record for the Commissioner's conclusion that the Teachers' grievance was untimely, such that reasonable minds could not have reached the same conclusion as the Commissioner. *See AEP Tex. Cent. Co.*, 345 S.W.3d at 68; *Simpson*, 2013 Tex. App. LEXIS 13581, at *8; *Jenkins*, 537 S.W.3d at 149; *Scally*, 351 S.W.3d at 445. The Commissioner erred by affirming the Board's decision, and the district court erred by affirming the Commissioner's decision. Accordingly, we sustain this portion of the Teachers' first issue.[15]

---

[15] Because we have sustained the Teachers' first issue challenging the dismissal of their appraisal grievance as untimely, we need not address the Teachers' second issue contending that the Commissioner also erred by refusing to consider whether the Teachers' appraisals violated Texas teacher-appraisal laws when he dismissed their grievance as untimely. *See* Tex. R. App. P. 47.1.

## 2. Commissioner's determination that Teachers' TEI grievance was untimely

The Commissioner determined in Finding of Fact No. 5 that "Petitioners' challenges to the components of the Teacher Excellence Initiative (TEI) program were not filed within ten business days of Petitioners learning of the components or of when Petitioners with reasonable diligence should have known of the components." The Commissioner stated that because adoption of a policy, such as TEI's new teacher appraisal system, is a "decision or action," any timely facial grievance to that policy would have to have been filed within ten district business days of the date that DISD adopted that policy, or within ten days of the date that a grievant became aware or should have become aware of that policy.

The Commissioner noted that the structure of the TEI teacher-appraisal system was set out in DISD's policy documents including the DNA (Legal), DNA(Local), and DNA (Regulation), which were adopted months before the Teachers filed their grievance. Further, as DISD and the Commissioner point out, DISD described the TEI teacher-appraisal system in a Guidebook issued in May 2014 and a Rulebook issued in January 2015, DISD conducted a full-day training for teachers on the TEI in August 2014, and DISD issued the updated Guidebook in March 2015. Given this timeline of events and the content of those publications in this record, the Commissioner could have reasonably concluded that the Teachers' facial grievance as to the components of the TEI system itself, filed October 2, 2015, was untimely because it was not filed within ten district business days of when the Teachers actually learned, or with reasonable diligence should have known, about the components of the TEI system. In this regard, reasonable minds could have reached the same conclusion as the Commissioner. *See AEP Tex. Cent. Co*., 345 S.W.3d at 68; *Simpson*, 2013 Tex. App. LEXIS 13581, at \*8; *Jenkins*,

32

537 S.W.3d at 149; *Scally*, 351 S.W.3d at 445. Accordingly, we overrule this portion of the Teachers' first issue.

**Third issue: Alleged decrease in Teachers' salary**

In their third issue, the Teachers challenge the Commissioner's determination that DISD did not violate Texas law by decreasing the Teachers' salary without prior notification and after the start of the school year. *See Bowman v. Lumberton Indep. Sch. Dist.*, 801 S.W.2d 883, 887-89 (Tex. 1990) (concluding that school district could not lower teachers' salary schedule after paying them for two months at higher rate from previous school year and after teachers were no longer able to resign unilaterally without penalty). The substance of the Teachers' claimed violation in their third issue is not based on a rate of inflation in the economy but on the higher cost of the Teachers' insurance premiums for the 2015-16 school year, resulting in a reduction of the Teachers' take-home pay.

The Commissioner determined that he lacked jurisdiction over the Teachers' claim because it failed to identify a violation of the school laws of this state or of an employment contract, *see* Tex. Educ. Code § 7.057(a), and because the Teachers' grievance "did not raise the issue of the cost of insurance at the local level." The Commissioner issued the following findings concerning this issue:

8.  No teacher contracts are in the local record.

12. The local record does not indicate that any Petitioner received a decrease in total compensation.

13. The local record does not indicate why some teachers paid more for insurance.

14. Petitioners did not contend in their cost-of-living argument during the grievance process that Respondent is required to give raises when the inflation rate increases.

33

15. Petitioners did not contend at the local level that Respondent was required not to raise the employee's portion of health insurance costs during the term of their contracts.

Because the Commissioner correctly found that the Teachers did not raise an issue about the cost of their insurance at the local level, the Teachers failed to preserve that issue for appeal. Moreover, even if that issue had been preserved, the reason for the increased insurance cost is unclear from the record. The Teachers provided some pay stubs to support their claim, but the Commissioner correctly noted that the record does not reflect whether the Teachers changed their insurance plan or whether more family members were covered during the second year. These changes could result in higher premiums and decreased take-home pay for reasons not attributable to DISD.

We conclude that the Teachers' issue alleging their salary decrease (due to an insurance-cost increase) was not preserved for the Commissioner's review because it was not raised at the local level. *See Solis*, 562 S.W.3d at 602 (noting that party who fails to raise particular complaint with school district in accordance with its applicable local grievance policy may not have record to present to Commissioner that can support party's complaint and may waive that complaint or fail to preserve it for subsequent appeal to Commissioner). Accordingly, the Commissioner did not err by dismissing the Teachers' salary-decrease complaint against DISD. The Teachers' third issue is overruled.

**CONCLUSION**

We conclude that the Commissioner erred in his determination that he lacked jurisdiction over the Teachers' appeal of their grievance. We further conclude that his dismissal of the Teachers' appeal of their appraisal grievance as untimely was not supported by substantial

34

evidence in this record. Accordingly, we reverse that part of the district court's judgment and remand this cause to the Commissioner for further proceedings consistent with this opinion.

However, we conclude that the Commissioner did not err by dismissing as untimely the Teachers' facial grievance as to the components of the TEI teacher-appraisal system, and by dismissing the Teachers' unpreserved complaint alleging that DISD decreased the Teachers' salary. Accordingly, we affirm those parts of the district court's judgment.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana
     Concurring and Dissenting Opinion by Justice Goodwin

Affirmed in Part; Reversed and Remanded in Part

Filed: October 17, 2019